**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

_____

EAGLEMED LLC, a Delaware limited
liability company; MED-TRANS
CORPORATION, a North Dakota
corporation; AIR METHODS
CORPORATION, a Delaware
corporation; ROCKY MOUNTAIN
HOLDINGS LLC, a Delaware limited
liability company,

        Plaintiffs - Appellees,

v.

JOHN COX, in his official capacity as
Director of Wyoming Department of
Workforce Services; JOHN
YSEBAERT, in his official capacity as
Administrator of the Wyoming
Department of Workforce Services,
Office of Standards and Compliance;
PETE SIMPSON, in his official
capacity as Senior Management
Consultant and Deputy Administrator,
Provider Services of the Wyoming
Department of Workforce Services,
Workers' Compensation Division,

        Defendants - Appellants.
_____

TEXAS MUTUAL INSURANCE
COMPANY,

        Amicus Curiae.

No. 16-8064

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:15–CV–00026–ABJ)**

---

Timothy W. Miller, Senior Assistant Attorney General (Peter K. Michael, Attorney General; Daniel E. White, Deputy Attorney General; and Charlotte M. Powers, Assistant Attorney General, with him on the briefs), Cheyenne, Wyoming, for Defendants-Appellants.

George W. Hicks, Jr., of Kirkland & Ellis, LLP, Washington, DC (Christina F. Gomez, Matthew J. Smith, and Jessica J. Smith of Holland & Hart LLP, Denver Colorado; Michael P. Manning of Holland & Hart LLP, Billings, Montana; and Richard A. Mincer and Khale J. Lenhart of Hirst Applegate LLP, Cheyenne, Wyoming, on the brief) for Plaintiffs-Appellees.

Matthew Baumgartner and P.M. Schenkkan of Graves, Doughtery, Hearon & Moody, P.C., Austin, Texas, filed an amicus curiae brief for Texas Mutual Insurance Company.

---

Before **LUCERO**, **McKAY,** and **BACHARACH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendants—various officials at the Wyoming Department of Workforce Services—appeal the district court's entry of a permanent injunction related to the Department's payment for air-ambulance services rendered to ill or injured individuals covered by the Wyoming Worker's Compensation Act.[1]  In its initial

---

[1] Plaintiffs brought this lawsuit against additional defendants as well—specifically, the State of Wyoming and the Workers' Compensation Division of the Department of Workforce Services.  The district court dismissed

judgment, the district court held that the Department's setting of a rate schedule for its payment for such services was preempted by the Airline Deregulation Act, and the court enjoined Defendants from enforcing both the rate schedule and the state statute which requires the Department to pay for ambulance services at a reasonable rate not to exceed the maximum rates set forth in the schedule. After Defendants took the position that preemption of the statute removed any statutory basis for the Department to pay air ambulances from the state workers' compensation[2] fund at all, the district court entered an amended judgment permanently requiring Defendants to pay the full amount charged for all air-ambulance services, whatever that amount might be, in the future. On appeal, Defendants challenge both the district court's legal holding on the preemption question and the scope of the injunctive relief ordered in the amended judgment.

## I.

The Wyoming Worker's Compensation Act is "the legislative embodiment of a compromise between employers and employees who recognized the need for

---

the State and the Division based on their sovereign immunity, and this decision is unchallenged on appeal. We use the term "Defendants" in this opinion to refer only to those Defendants who are involved in this appeal.

[2] We note that, although the state statute places the possessive apostrophe between the "r" and the "s" in "worker's," see Wyo. Stat. Ann. § 27-14-101(a), the Department of Workforce Services' Workers' Compensation Division uses the plural form of "workers' compensation" both in its name and in its official documents. We shall follow Wyoming's inconsistent lead in this opinion, using the singular form when naming the Act and otherwise using the plural form.

a new system to compensate employees for employment-related injuries without the employee having to rely upon tort concepts." *Baker v. Wendy's of Mont., Inc.*, 687 P.2d 885, 887 (Wyo. 1984). The Act provides mandatory coverage for all workers employed in several sectors of employment which are deemed to be extrahazardous in nature, and it also covers other employees whose employers elect to participate in the Act. Employers of covered workers must contribute to the state workers' compensation account, and in return they are provided with immunity from the tort claims that could otherwise have been brought against them. As for covered employees, "[i]n return[] for relinquishing their right to common-law actions against the employers when there was cause therefor in event of work-related injuries, the employees receive[] speedy relief for such injuries, regardless of lack of fault on the part of the employer and without cost and delay attendant to legal action." *Meyer v. Kendig*, 641 P.2d 1235, 1238 (Wyo. 1982). As the Wyoming Supreme Court has described it, the Act "establish[ed] an industrial-accident fund—financed by industry and underwritten by the State—from which the families of deceased employees and employees injured while engaged in extrahazardous employment would be compensated according to amounts previously determined by the legislature." *Hamlin v. Transcon Lines*, 697 P.2d 606, 615 (Wyo. 1985). Employers' contributions to the workers' compensation fund are "accumulated, paid into the state treasury and maintained in such manner as may be provided by law." Wyo. Const. art. 10, § 4.

The Wyoming Department of Workforce Services, and specifically the Workers' Compensation Division of the Department, is charged with managing the workers' compensation fund and paying covered compensation from the fund. The program is required to be "neither more nor less than self-supporting," Wyo. Stat. Ann. § 27-14-201(a), and the Division is tasked with ensuring both that the employers' contributions are fixed "at the lowest rate consistent with the maintenance of an actuarially sound worker's compensation account," *id.* § 27-14-201(c), and that the amounts paid for workers' medical and related costs are reasonable, *id.* § 27-14-401. Indeed, the statute provides that "[n]o fee for medical or hospital care under this section shall be allowed by the division without first reviewing the fee for appropriateness and reasonableness in accordance with its adopted fee schedules." *Id.* § 27-14-401(b).

The Act contains a single provision that pertains to the payment of costs associated with ambulance services. Section 27-14-401(e) provides: "If transportation by ambulance is necessary, the division shall allow a reasonable charge for the ambulance service at a rate not in excess of the rate schedule established by the director under the procedure set forth for payment of medical and hospital care." In accordance with this statute, the Division has established a rate schedule for both ground- and air-ambulance services. This rate schedule provides, for instance, that the maximum reimbursement for transportation in a rotary-wing air ambulance is $3,900.66 plus $27.47 per statute mile. *See* Rules,

Regulations & Fee Schedules of the Wyo. Workers' Safety & Comp. Div. Ch. 9. The "procedure set forth for payment of medical and hospital care," incorporated by reference in Section 27-14-401(e), is established in Section 27-14-501(a). This section provides in part: "Within thirty (30) days after accepting the case of an injured employee and within thirty (30) days after each examination or treatment, a health care provider or a hospital shall file without charge a written medical report with the division. . . . Fees or portions of fees for injury related services or products rendered shall not be billed to or collected from the injured employee."

Plaintiffs are several companies which provide air-ambulance services in Wyoming. In this lawsuit, Plaintiffs sought declaratory and injunctive relief against Defendants, arguing that the federal Airline Deregulation Act, 49 U.S.C. §§ 1371 *et seq.*, preempts Section 27-14-401(e) and the associated rate schedule because they impermissibly regulate the price of air-ambulance services. On cross-motions for summary judgment, the district court agreed "that the Airline Deregulation Act preempts Wyoming Statute section 27-14-401(e) and Chapter 9, Section 8 of the Rules, Regulations and Fee Schedules of the Wyoming Workers' Compensation Division to the extent the statute and regulation set compensation that air ambulances may receive for their services." (Appellants' App. at 416.) The court accordingly entered an injunction against Defendants which "permanently enjoined [them] from enforcing Wyoming Statute Section 27-14-

401(e) and Chapter 9, Section 8 of the Rules, Regulations and Fee Schedules of the Wyoming Workers' Compensation Division against air ambulance services." (*Id.* at 418.)

Defendants then filed a motion for a stay pending appeal in which they took the position that this injunction, by prohibiting them from enforcing the statute which provided for the reimbursement of air ambulances, prevented them from paying air-ambulance workers' compensation claims at all. Plaintiffs argued in response that the state statute should be preempted only in part, with the statute being read to strike both the word "reasonable" from the description of the allowed claims and the limitation on reimbursement to "a rate not in excess of the rate schedule established by the director under the procedure set forth for payment of medical and hospital care." Thus, Plaintiffs argued that the statute should be interpreted to require the Division to pay all charges, at whatever rate and however unreasonable, that would thereafter be submitted to the Division for air-ambulance claims. The district court agreed, entering an amended judgment which ordered "the named state officials and their employees and agents . . . to compensate air ambulance entities the full amount charged for air ambulance services." (*Id.* at 478.) Defendants appeal this decision as well as the district court's underlying preemption holding.

## II.

"While we typically review a district court's grant of an injunction for abuse of discretion, we review de novo a summary judgment which serves as a basis for an injunction." *United States v. Hartshorn*, 751 F.3d 1194, 1198 (10th Cir. 2014) (internal quotation marks and brackets omitted). "We review the grant of summary judgment de novo, construing all evidence and drawing any inferences in a light most favorable to the party opposing summary judgment." *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). After reviewing the legal issues involved in the entry of summary judgment de novo, "we review the district court's grant or denial of a permanent injunction for abuse of discretion," *id.*, "and we have authority to modify an injunction if it is overbroad," *United States v. Jenks*, 22 F.3d 1513, 1519 (10th Cir. 1994).

In their opening brief, Defendants raise two arguments as to why the district court erred in holding on summary judgment that the state statute and rate schedule are preempted by the Airline Deregulation Act. First, Defendants argue that this legal conclusion was erroneous because the state statutory scheme is not compulsory, but rather presents air-ambulance providers with the contractual option to either obtain reimbursement from the Division at the specified rates or to seek payment from the injured Wyoming worker directly. Defendants argue that the state statute and rate schedule are accordingly not "state-imposed obligations," but are instead "privately ordered obligations" free from preemption

under the Airline Deregulation Act.  *See Am. Airlines v. Wolens*, 513 U.S. 219, 228–29 (1995).  Second, Defendants argue that the preemption question could not be resolved on summary judgment because there is a material dispute of fact as to whether the Wyoming state and rate schedule actually have a significant and adverse effect on Wyoming air-ambulance prices.  In addition to these two arguments, additional arguments against preemption were raised in the amicus curiae brief filed by Amicus Texas Mutual Insurance Company, which Defendants' reply brief adopts by reference.  We consider the two arguments raised by Defendants' opening brief first, then turn to the amicus arguments.

The Airline Deregulation Act's preemption provision states in pertinent part that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  The Supreme Court has explained that this provision expresses "a broad pre-emptive purpose" and will preempt any "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992).  However, the preemption clause does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  *Wolens*, 513 U.S. at 228.  Thus, in *Wolens* the Court held that while claims brought under a state Consumer Fraud

Act were preempted by § 1305(b)(1), the plaintiffs' breach-of-contract claims were not preempted because these claims simply sought to enforce the "privately ordered obligations" that the airline voluntarily agreed to, not state-imposed obligations.

Defendants argue that the Wyoming statute and rate schedule at issue in this case likewise set forth privately ordered contractual obligations that the air ambulances voluntarily agree to when they present claims for reimbursement to the Workers' Compensation Division. Defendants contend that air-ambulance companies are free to either submit a bill to the Division for reimbursement at the rates established in the rate schedule, agreeing in return not to bill any remaining unpaid amounts to the injured worker, or to submit the entire bill to the injured worker for payment. To support this argument, Defendants cite to Section 27-14-401(e), which provides: "If transportation by ambulance is necessary, the division shall allow a reasonable charge for the ambulance service at a rate not in excess of the rate schedule . . . ." Defendants argue that because this statute mentions only a payment duty on the part of the Division and does not affirmatively regulate the actions of ambulance companies, the statute must be interpreted as allowing ambulance companies to seek payment outside the strictures of the Worker's Compensation Act if they wish to do so. Defendants also cite to Section 27-14-501(a), which provides in part that "[w]ithin thirty (30) days after accepting the case of an injured employee and within thirty (30) days

-10-

after each examination or treatment, a health care provider or a hospital shall file without charge a written medical report with the division. . . . Fees or portions of fees for injury related services or products rendered shall not be billed to or collected from the injured employee." Defendants contend that an air-ambulance provider does not "accept[] the case of an injured employee" until the provider chooses to present a claim to the Division, and it is only then, Defendants contend, that the remainder of the statute kicks in and prohibits the provider from billing the injured employee for the expenses incurred. Thus, Defendants contend that the statute presents air-ambulance providers with a contractual offer to receive payment from the Division at the rates established in the rate schedule, which the providers may freely accept or reject at their discretion.

We find this argument to be unpersuasive. First, we note that the other reimbursement provisions in Section 27-14-401 likewise speak in terms of the Division's payment responsibilities and do not expressly regulate the providers of medical or other services themselves. Thus, Defendants have presented no principled reason why we could read the statute to treat air-ambulance companies any differently from any other providers of medical or related services, and our interpretation of the statute as it relates to air-ambulance providers would apply with equal force to all in-state providers of medical or related services to injured workers. With this fact in mind, we further note that there is nothing in the language of either of the provisions cited by Defendants which suggests that it

-11-

was intended to establish a contractual offer that could be freely accepted or rejected at the will of the ambulance company or other health-care provider. Rather, the language of these provisions suggests that they are intended to establish a universally applicable system for managing all in-state workers' compensation claims. Moreover, while another provision in the statute allows the Division to "negotiate with out-of-state health care providers regarding the payment of fees for necessary medical care to injured workers," Wyo. Stat. Ann. § 27-14-401(g), there are no statutory provisions suggesting that the state has granted the Division the authority to enter into similar contracts with in-state providers, much less any statutory provisions suggesting that the entire workers' compensation system is intended to work as a voluntary contractual offer for medical providers to opt into compensation from the Division at set rates in exchange for giving up their right to bill injured workers directly for the full amount of their claims.

Defendants also rely on a provision in the Rules, Regulations and Fee Schedules of the Wyoming Workers' Compensation Division which provides that "[r]equests for reimbursement may be submitted to the Division by an injured worker for expense paid out-of-pocket for medical service(s) deemed reasonable, necessary and directly related to his work-related injury on a form provided by the Division." Rules Wyo. Dep't of Workforce Servs, Workers' Comp. Div., ch. 7, § 3(a)(iii). They argue that this provision proves that ambulance companies

and health-care providers may opt to bill workers directly for the full amount of the charged expenses rather than proceeding under the Worker's Compensation Act to receive payment from the Division at the rates set in the rate schedules. We are not persuaded that a provision allowing workers to submit requests for reimbursement to the Division proves that ambulance and medical providers may choose at will to opt out of the Act and directly bill workers for the full amount of their transportation and health-care claims. Among other problems with this interpretation, Defendants do not explain what the reimbursement rates for such directly billed ambulance and medical claims would be—either the Division would reimburse only the amounts provided by the rate schedule, which would potentially leave workers facing extensive personal liability for charges in excess of the scheduled rates, or the Division would be required to pay much more for charges directly billed to workers than the scheduled rates allow, which, as Defendants themselves argue, would exceed the Division's powers as authorized by the Wyoming legislature. Either way, this interpretation would be contrary to the Act's purposes. There may occasionally be situations in which a worker pays for medical services out-of-pocket, and this rule establishes what will happen in such a situation. It does not grant ambulances, medical professionals, and hospitals the right to seek full reimbursement of all claimed charges from the injured worker in every workers' compensation case.

Defendants' reading of the statute and related regulations would remove many of the protections provided to injured workers by the Act, exposing them to potentially enormous medical bills from any medical or related provider who was unhappy with the state's reimbursement rates, and it is directly contrary to the Wyoming Supreme Court's directive that the Act "should be applied in favor of the workman to the end that industry, not an individual, bears the burden of an accident and injury that has occurred within the industrial setting." *Wright v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 952 P.2d 209, 212 (Wyo. 1998). We see no basis in the statutory text for such a result, and we accordingly reject Defendants' argument that the statute simply provides air-ambulance providers with the voluntary option to obtain reimbursement from the Division at the scheduled rates in lieu of pursuing the full amount of the claim against the injured worker directly. While such a system might perhaps be an effective way for a state to structure its payments of air-ambulance workers' compensation claims without running afoul of the Airline Deregulation Act—a question we do not here reach—the Wyoming statute as it currently exists simply does not establish a voluntary contractual relationship, and thus Defendants' reliance on *Wolens* is unavailing.

Defendants' second argument against preemption is that the district court could not decide the preemption question on summary judgment because there is a material dispute of fact as to whether the Wyoming statute actually affects the

rates of air-ambulance services in Wyoming.  This argument is defeated by the very cases Defendants cite to support it.  For instance, Defendants cite to *Travel All Over the World v. Saudi Arabia*, in which the Seventh Circuit rejected a preemption argument for state-law slander and defamation claims that did not *either* "expressly refer to airline rates, routes or services," *or* "have [a] forbidden significant economic effect on airline rates, routes, or services."  73 F.3d 1423, 1433 (7th Cir. 1996) (internal quotation marks and brackets omitted).  As this and other cases make clear, however, the court only needs to decide whether a particular state law or claim has a "forbidden significant economic effect on airline rates, routes, or services" when the state law at issue does not "expressly refer to airline rates, routes or services" itself.  *Id.* (internal quotation marks and brackets omitted); *see also, e.g.*, *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34–35 (1st Cir. 2007) ("[T]he ADA preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices.").  The state statute and rule at issue in this case expressly establish a mandatory fixed maximum rate that will be paid by the State for air-ambulance services provided to injured workers covered by the Worker's Compensation Act, and thus the district court did not need to also decide whether the statute and rule also had a significant economic effect on airline rates, routes, or services.

We turn then to the arguments raised in the amicus brief.  Plaintiffs argue that we should not consider these arguments because they were not raised in

-15-

Defendants' opening brief and we generally will not "reach out to decide issues advanced not by the parties but instead by *amicus*." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997). However, we have recognized that one of the situations in which consideration of an amicus argument may be appropriate is when "a party attempts to raise the issue by reference to the *amicus* brief." *Id.* Here, Defendants' reply brief adopts all of the amicus arguments by reference. Moreover, we note that Plaintiffs were provided with the opportunity to address all of the amicus arguments in their expanded answer brief, and thus the issues before us have received the benefit of the adversarial briefing process. Particularly in light of the importance and the unsettled nature of the legal issues before us, we conclude that it is appropriate for us to exercise our discretion in this case to consider the arguments raised in the amicus brief and adopted by reference in Defendants' reply brief.

The amicus brief raises two main arguments as to why we should find the Wyoming statute and rate schedule not to be preempted by the Airline Deregulation Act. First, Amicus argues that Congress did not intend to prevent state workers' compensation programs from regulating air-ambulance fees. Second, Amicus argues that the McCarran–Ferguson Act protects Wyoming's workers' compensation statute from federal preemption.

Amicus raises several policy-related reasons why we should conclude that Congress did not intend to prevent state workers' compensation programs from

regulating air-ambulance fees. Amicus points out, for instance, that the market for air-ambulance services is severely distorted based on the unique circumstances surrounding these services. Unlike the typical commercial airline flights that were the focus of the Airline Deregulation Act, air-ambulance flights generally are not chosen by their passengers, are not paid in advance at an agreed-to rate, and do not have prices that are determined in a free market of individual consumer choice. As a general rule, air-ambulance services are not requested or arranged by either the individuals who will receive the services or by the insurance companies, governmental entities, or individuals who will ultimately pay for them. Rather, air ambulances are called by medical professionals and emergency first-responders who will neither receive nor pay for their services. Their prices are determined only after the service has already been rendered—in cases paid through Medicare or Medicaid, at prices established by government rate schedules, and in cases paid through private insurance, usually at a price negotiated between the air ambulance and the insurer. *See* United States Government Accountability Office, Air Ambulance: Effects of Industry Changes on Services are Unclear, GAO Report to Congressional Requesters at 6–7 (Sept. 2010). And, as for the significant proportion of individuals who are uninsured or whose insurance will not cover any or a portion of such claims, these individuals may be billed an extremely high amount that they would not have agreed to if they had been both aware of the potential price and capable of making an

informed decision as to their medical transport at the time the air-ambulance service was arranged.  *See Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, at *4–5 (W.D. Okla. 2017); *see also* M. Kit Delgado et al., Cost-Effectiveness of Helicopter versus ground Emergency Medical Services for Trauma Scene Transport in the United States, 62(4) *Ann. Emerg. Med.* 351, 352 (Oct. 2013) (included in Appendix G to amicus brief) ("Furthermore, a systematic review has shown that more than half of the patients flown [in air ambulances] have minor or non-life-threatening injuries that would likely have similar outcomes if transported by ground.").

There is certainly some persuasive force to the amicus argument that federal preemption of state regulations in this field is not serving the congressional purpose of "further[ing] efficiency, innovation, and low prices" that was a motivating force behind the Airline Deregulation Act, *Morales*, 504 U.S. at 378 (internal quotation marks omitted).  (*See also* R. at 324 (citing a New York Times article which reported that the average Air Methods bill had increased from $17,262 in 2009 to more than $40,000 by 2014, while Air Methods' profits surged).)  Due to the Airline Deregulation Act's broad preemption provision, states have been unable to "prevent air ambulance service providers . . . from imposing exorbitant fees on patients who wrongly assume their insurance will cover the charges and are not in a position to discover otherwise" or engaging in other unscrupulous pricing behaviors that would not be sustainable in a true free

-18-

market but are easily perpetuated in the warped market of air-ambulance services. *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 942 (D.N.D. 2016). Amicus argues that surely Congress did not anticipate or intend such a result.

But when a statute contains an express preemption clause, "we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free*, 136 S. Ct. 1938, 1946 (2016) (internal quotation marks omitted). And when the statute's language is plain, our inquiry into preemption both begins and ends with the language of the statute itself. *Id.*

Neither Amicus nor Defendants have presented a single textual reason to support the argument that the broad language of the Airline Deregulation Act's express preemption provision should not include air-ambulance services. Amicus cites several policy reasons why it would make sense for air-ambulance services to be excluded from federal preemption, but these policy reasons cannot trump the plain language of the statute. And neither Amicus nor Defendants argue that air ambulances are not "air carriers" under the statute, nor do they otherwise assert that the plain language of the statute excludes air ambulances from its reach. Any deficiency in the plain language of the statute or the scope of its coverage must be corrected by Congress, not this court. "We cannot rewrite [an unambiguous statute] to reflect our perception of legislative purpose." *Shady Grove Orthopedic*

*Assocs. v. Allstate Ins.*, 559 U.S. 393, 403 (2010).  Because air ambulances are included within the broad language of the Airline Deregulation Act's preemption statute as it is currently written, we must reject Amicus's policy-based reasons for holding that the Wyoming statute and rate schedule should be exempted from federal preemption in this case.

We turn then to the final argument raised against preemption in this case—the amicus argument that the McCarran–Ferguson Act precludes federal preemption of the state statute and rate schedule at issue here.  The McCarran–Ferguson Act provides in pertinent part:  "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012.  Amicus argues that the McCarran–Ferguson Act is applicable here because (1) some states operate their workers' compensation programs through a comprehensively regulated private insurance market, so the laws regulating workers' compensation in such states are laws "regulating the business of insurance"; and (2) every state's workers' compensation laws should accordingly be protected from inadvertent federal preemption in order to avoid "creat[ing] an incongruous patchwork of preemption depending on how the various states chose to implement workers' compensation insurance."  (Amicus Br. at 26.)  Amicus makes no other attempt to argue that the Wyoming workers'

-20-

compensation system regulates or even involves the business of insurance. We are not persuaded that we should find the Wyoming statute to regulate the business of insurance simply because other states have structured their workers' compensation programs to operate through private insurance companies.

We note that Defendants argued in the district court proceedings that the Wyoming workers' compensation system is in effect a type of industrial-accident insurance and thus that the Wyoming statute and fee schedule were protected by the McCarran–Ferguson Act on their own merits and not just based on the way other states have structured their workers' compensation programs. However, even if we were to accept the argument that Wyoming's state-run workers' compensation system establishes a type of insurance, we are not persuaded that either Section 27-14-401(e) or its associated rate schedule are laws "regulating the business of insurance." In order for a state law to be precluded from federal preemption under the McCarran–Ferguson Act, the law "must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987). Moreover, the state statute must be specifically directed toward "the 'business of insurance,'" not just "the business of insurance companies," which means it must involve something more than an insurance company's agreement with medical providers or pharmacies to fix prices. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210–11 (1979). "[C]ost-savings arrangements may well be sound

business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the 'business of insurance.'" *Id.* at 214.

The state statute and fee schedule at issue in this case do not serve to underwrite or spread policyholders' risks; rather, they "only minimize the costs [the insurer] must incur to fulfill its underwriting obligations," *St. Bernard Hosp. v. Hosp. Serv. Ass'n*, 618 F.2d 1140, 1145 (5th Cir. 1980). As such, they do not "regulat[e] the business of insurance" within the meaning of the McCarran–Ferguson Act. *See id.*; *see also, e.g.*, *Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802, 808 (6th Cir. 2006) (holding that a state law regulating reimbursement agreements between an insurer and medical providers did not regulate the business of insurance); *Valley Med Flight*, 171 F. Supp. 3d at 943–45 (holding that a state statute establishing call lists for air-ambulance providers based on their acceptance of reimbursement rates was preempted by the Airline Deregulation Act and not subject to reverse preemption under the McCarran–Ferguson Act because it did not regulate the business of insurance).

We therefore affirm the district court's holding that Section 27-14-401(e) and the associated rate schedule for ambulance services are preempted by the Airline Deregulation Act to the extent that they set maximum reimbursement rates for air-ambulance services provided to injured workers covered by the Wyoming Worker's Compensation Act.

We turn then to Defendants' challenge to the breadth of the injunctive relief ordered. The district court concluded that, because the Airline Deregulation Act preempted the State's attempt to establish fixed maximum reimbursement rates for air-ambulance carriers, then the Workers' Compensation Division was necessarily required to pay in full any amount charged to the Division by an air-ambulance provider that transported a covered injured worker. The district court's amended judgment accordingly required Defendants to reimburse all air-ambulance claims in full at whatever rate Plaintiffs chose to charge them. We agree with Defendants that the district court abused its discretion in so holding.

In fashioning injunctive relief against a state agency or official, a district court must ensure that the relief ordered is "no broader than necessary to remedy the [federal] violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1086–87 (9th Cir. 1986) (citations omitted). Moreover, "[a] federal court may not enjoin a state official to follow state law." *Id.* "Fundamental precepts of comity and federalism admit of no other rule." *Knop v. Johnson*, 977 F.2d 996, 1008 (6th Cir. 1992).

In this case, the only federal violation that occurred was Wyoming's enactment and application of a statute which provided that ambulance providers, including air-ambulance providers, would be reimbursed in accordance with a fixed rate schedule. The injunctive relief ordered in the district court's initial judgment—enjoining Defendants from enforcing the preempted statute and rate

schedule, as they related to air-ambulance claims—was sufficient to remedy this federal violation.

The district court's amended judgment, on the other hand, went well beyond what was necessary to remedy the federal violation, placing an affirmative duty on state officials to reimburse in full all air-ambulance claims submitted to the Workers' Compensation Division. However, any such possible duty would exist as a creation only of state, not federal, law. Plaintiffs have not identified a single provision in the Airline Deregulation Act or any other federal statute which would require Defendants to make any payment of air-ambulance claims whatsoever, much less payment at whatever rates Plaintiffs choose to charge them.[3] The question of how Defendants should administer the state Worker's

---

[3] The district court held that Defendants must be required to pay air-ambulance claims because the failure to pay these claims would illegally regulate air-ambulance rates by setting an effective rate of zero dollars. The court erred in so holding. Defendants' decision not to pay these claims only affects the payment of air-ambulance companies from state funds. It does not preclude air-ambulance companies from seeking payment—at any rate—from the individuals who receive their services. In effect, the district court concluded that the State was required to have a statute providing for the payment of air-ambulance claims in order to avoid illegally regulating air-ambulance rates. We see no merit to this conclusion. Again, we reiterate that the Airline Deregulation Act does not impose a duty on the State to pay air-ambulance claims. To the extent that a state has undertaken to pay such claims for some or all of its citizens, it is state law, not federal law, that governs such payment, and a state does not violate the Airline Deregulation Act simply by declining to make such payments.

Perhaps the district court was concerned that Section 27-14-501(a) might be read in the future to prevent air-ambulance companies from seeking reimbursement from the workers themselves, thus preventing the companies from receiving payment from their passengers as well as from the State. However, if

Compensation Act without enforcing the preempted rate schedule against air-ambulance carriers is a question of state law, and any duty to pay the claims remains a state duty, not a federal duty.

Federal law establishes no duty for states to pay the air-ambulance claims of injured workers who are covered by state workers' compensation statutes. To the extent that Defendants may be required to pay such claims, it is state law, not federal law, that requires such action, and we reiterate that "[a] federal court may not enjoin a state official to follow state law." *Toussaint*, 801 F.2d at 1087. The district court thus abused its discretion when it entered its amended judgment requiring Defendants to reimburse in full all air-ambulance claims received by the Division.

Finally, we briefly address Plaintiffs' argument that the state statute must be interpreted in such as way as to require the State to reimburse air-ambulance claims because individual workers should not be left personally responsible for enormous air-ambulance bills and air-ambulance companies should not have to suffer financial losses from carrying injured workers who are unable to pay such bills themselves. We recognize that such unfortunate consequences may arise due to the ill-conceived intersection of the Airline Deregulation Act's broad

---

this were to happen, then it would be Section 27-14-501(a) that would be illegally regulating air-ambulance rates by preventing any recovery from air-ambulance passengers, and the proper remedy would seem to be the preemption of this statute, not the forced payment of air-ambulance claims from state coffers.

preemption provision with states' attempts to administer financially sound workers' compensation programs in the face of skyrocketing air-ambulance bills. Such policy considerations, however, are beyond the purview of this court. Policy arguments in favor of excluding air-ambulance providers from the scope of the Airline Deregulation Act's preemption provision must be addressed to Congress, and policy or statutory arguments in favor of requiring Wyoming's Workers' Compensation Division to reimburse air-ambulance providers for transporting injured workers in Wyoming must be addressed to state officials, the state legislature, or the state courts. The role of this court is simply to enforce the plain language of the Airline Deregulation Act as it is currently written and to ensure that the remedy ordered "does no more and no less" than correct the violation of that federal act, *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). The plain language of the Airline Deregulation Act requires us to hold that the Wyoming Worker's Compensation Act and rate schedule are preempted to the extent that they set mandatory fixed rates for reimbursement of air-ambulance claims. Principles of comity and federalism require us to limit the remedy ordered to correct the federal violation without otherwise interfering in Defendants' interpretation of and application of state law. Our holding is so limited.

## III.

We **AFFIRM** the district court's legal ruling that Wyoming Statute Section 27-14-401(e) and its associated rate schedule are precluded to the extent that they set forth a mandatory maximum reimbursement rate for air-ambulance claims. We also **AFFIRM** the initial order of injunctive relief entered in the district court's initial judgment, permanently enjoining Defendants from enforcing the rate schedule against air-ambulance services. We **REVERSE** the amended judgment and the overbroad injunctive relief entered therein, leaving it for the state officials to determine, as a matter of state law, how Wyoming can and should administer its workers' compensation program within the limitations set by federal law.