# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2021

Lyle W. Cayce
Clerk

No. 18-50722

Air Evac EMS, Incorporated,

*Plaintiff—Appellee*,

*versus*

Kent Sullivan, *in his Official Capacity as Texas Commissioner of Insurance*; Cassie Brown, *in her Official Capacity as Texas Commissioner of Workers' Compensation*,

*Defendants—Appellants*,

*versus*

Texas Mutual Insurance Company; Liberty Mutual Insurance Company; Zenith Insurance Company; Hartford Underwriters Insurance Company; Twin City Fire Insurance Company; Transportation Insurance Company; Valley Forge Insurance Company; Truck Insurance Exchange,

*Intervenors—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-60

Before STEWART, CLEMENT, and HO, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:

Air Evac EMS, Inc., is an air ambulance provider that offers medical transport services to a wide variety of patients. That includes patients who are injured at their workplace. The price that Air Evac may charge for such transportation is accordingly subject to conflicting regulatory regimes.

The Texas Workers' Compensation Act ("TWCA"), TEX. LAB. CODE §§ 401.007–419.007, regulates the prices that insurers must pay to providers for various medical services utilized by their beneficiaries. That includes air transport services. But those price restrictions conflict with the federal Airline Deregulation Act ("ADA"), which makes clear that the states "may not enact or enforce a law, regulation, or other provision . . . related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

The price restrictions are not saved by the McCarran–Ferguson Act. That act makes clear that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). But the price regulations at issue here do not govern "the business of insurance." The McCarran–Ferguson Act concerns state efforts to regulate the relationship between insurers and insureds—not between insurers and providers.

We accordingly affirm. In doing so, we agree with our sister courts of appeals, which have unanimously held that the ADA preempts state price caps on air ambulance reimbursements, and that those state price caps are not saved by the McCarran–Ferguson Act. And we disagree with the Texas Supreme Court, which has reached contrary conclusions by a divided vote.

No. 18-50722

## I.

Under the TWCA, employees in Texas receive guaranteed medical care paid for by employer-funded insurance policies, in exchange for relinquishing their common-law workplace injury claims. As part of this regulatory scheme, the TWCA strictly regulates the prices that private insurers must pay health care providers for treating workers injured on the job. *See* Tex. Lab. Code § 413.011; 28 Tex. Admin. Code §§ 134.1, 134.203. The TWCA also prohibits providers from engaging in "balance-billing"—that is, they cannot collect any remaining balance from either the employer or employee after an insurer has reimbursed the provider less than the full amount for the services rendered. *See* Tex. Lab. Code § 413.042(a).

Air Evac contends that these price caps are preempted by the ADA. So it sued various Texas state officials, seeking a declaration that the ADA preempts the TWCA and its regulations, and an injunction barring enforcement of the price caps. Alternatively, Air Evac requested an injunction barring enforcement of the TWCA's balance-billing prohibition.

Eight insurance companies joined the Texas officials as intervenors to defend Texas law. Together they moved to dismiss the case on various jurisdictional grounds. The district court granted the motion, but we subsequently reversed. *See Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 510 (5th Cir. 2017).

On remand, the district court granted Air Evac's motion for summary judgment on its claim that the Texas price caps were preempted by the ADA and not saved by the McCarran–Ferguson Act. *See Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 667 (W.D. Tex. 2018). Consequently, it did not address Air Evac's alternative balance-billing claim. *Id.* at 656 n.4. The district court enjoined enforcement of Texas Labor Code § 413.011 and

Texas Administrative Code §§ 134.1 and 134.203 as applied to Air Evac. *Id.* at 664.

Both the State and the eight insurance companies appealed. Following oral argument in this case, the Supreme Court of Texas decided a similar case addressing the same issues. *See Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839 (Tex. 2020), *cert. denied*, _ S. Ct. _, 2021 WL 1602647 (Apr. 26, 2021) (mem.). Contrary to the district court here and our sister courts of appeals that have examined these issues, the Texas Supreme Court held that the TWCA price caps on air ambulance providers are not preempted by federal law. But it did so over a thorough dissent supported by two members of the court. *Id.* at 865 (Green, J., joined by Hecht, C.J.). Seven members sided with the majority, but for differing reasons—six concluded that the ADA does not preempt the TWCA price caps, *id.* at 843, while four concluded that the TWCA price caps are saved by the McCarran–Ferguson Act, *id.* at 856.

We review summary judgment rulings de novo. *IberiaBank v. Boussard*, 907 F.3d 826, 842 (5th Cir. 2018).

## II.

Congress enacted the ADA in 1978, introducing free-market principles to a heavily regulated and stagnating aviation industry. To streamline regulations, avoid a patchwork of state protocols, and "ensure that the States would not undo federal deregulation with regulation of their own," Congress included an express preemption provision. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

Under the express preemption provision, "[a] State[] . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The

Supreme Court has made clear that this express preemption provision "has a 'broad scope'" and "an 'expansive sweep,'" and that the "ordinary meaning of these words . . . express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383–84 (citations omitted).

Two of our sister circuits have unanimously held that the ADA preempts price controls on air ambulance services set by state workers' compensation regulations. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018); *EagleMed LLC v. Cox*, 868 F.3d 893 (10th Cir. 2017). We agree.

As a threshold matter, Texas and the insurers urge that we adopt a presumption against preemption when it comes to issues of traditional state law such as workers' compensation. We need not address that contention here, however, because we do not regard this as a close call—the text of the ADA plainly governs this case. *See*, *e.g.*, *Cheatham*, 910 F.3d at 762 n.1 ("[W]e need not enter the great preemption presumption wars here because the text of the preemption provision . . . governs the disposition of this case.").

Under the ADA, a state may not enforce any law or regulation that is (1) "related to a price" of (2) an "air carrier" that (3) may provide air transportation "under this subpart." 49 U.S.C. § 41713(b)(1). Each of those elements is satisfied here. We address each in turn.

## A.

The TWCA regulations in question plainly involve the "price" of air transport services. The ADA defines "price" as "a rate, fare, or charge." 49 U.S.C. § 40102(a)(39). We see no reason to depart from the ordinary meaning of these terms. The term "price" simply means the "sum of money . . . asked or given for something" in return. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1038 (1979). *See also id.* at

1082 (defining "rate" as "a charge or payment calculated in relation to any particular sum or quantity"); *id.* at 476 (defining "fare" as a "transportation charge"); *id.* at 226 (defining "charge" as "to set or ask (a given amount) as a price").

The TWCA regulations plainly govern "price"—namely, the price that Air Evac is allowed to charge Texas workers' compensation insurers for air ambulance services.

For their part, Texas and the insurers contend that the term "price" applies only to competitive markets—and that "air ambulances do not operate in a market that would dictate the price or rate charged in the absence of government interference." Under that view, any amount that is determined by a regulator for a particular good or service would not constitute a "price." That would make terms like "price controls" an oxymoron. Yet the term is ubiquitous in our law. "Consistent usage, as reflected in numerous judicial opinions, can be an authoritative source of common parlance." *Frederking v. Cincinnati Ins. Co.*, 929 F.3d 195, 198 (5th Cir. 2019) (citing *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 540 (2019)). *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 418 (1944) (concerning the constitutionality of the Emergency Price Control Act of January 30, 1942, 56 Stat. 23); *United States v. Uni Oil, Inc.*, 710 F.2d 1078, 1080 (5th Cir. 1983) (concerning federal "price controls" on oil). *See also* Address to the Nation Outlining a New Economic Policy: "The Challenge of Peace", Public Papers of President Richard M. Nixon 888 (Aug. 15, 1971) ("I am today ordering a freeze on all prices and wages throughout the United States for a period of 90 days. In addition, I call upon corporations to extend the wage-price freeze to all dividends."); Exec. Order No. 11,615—Providing for Stabilization of Prices, Rents, Wages, and Salaries, 36 Fed. Reg. 15,727 (Aug. 15, 1971). In response, Texas and the insurers rely on *Hodges v. Delta*

*Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc).  But in *Hodges* we construed the term "service," not "price," under the ADA.

In sum, the amount that TWCA rules would allow Air Evac to receive for its air ambulance services falls well within the term "price" under the ADA.  Accordingly, those TWCA rules plainly "relate to" price.

As the Supreme Court has observed, the term "related to" under the ADA is broad and indeed "much more broadly worded" than other preemption provisions. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014). *See also Morales*, 504 U.S. at 383–85.  A law "relate[s] to" price under the ADA so long as it has a "connection with or reference to" price or presents a "significant effect" on the price of air services. *Morales*, 504 U.S. at 384, 388. *See also Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34–35 (1st Cir. 2007) ("[T]he ADA preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices."); *Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (declining to find preemption when plaintiffs' tort claims neither "expressly refer to airline rates, routes, or services," nor have a "'forbidden significant [economic] effect' on airline rates, routes, or services") (alteration in original).

The TWCA regulations challenged here obviously have a "significant effect" on Air Evac's prices—they effectively forbid Air Evac from recovering from workers' compensation insurers the price that they would otherwise charge for air ambulance services.  As we have previously noted, the "TWCA's provisions effectively set a reimbursement rate" on air ambulance services by restricting the amount insurers pay them. *Air Evac*, 851 F.3d at 514. *See also PHI Air Med.*, 610 S.W.3d at 866 (Green, J., dissenting) ("The TWCA's reimbursement scheme is related to an air ambulance's prices because it indirectly limits the amount than an air carrier

may charge for its services."). As the Fourth Circuit put it, "[i]f such actions involving an air carrier are not 'related to price,' it is unclear what meaning the phrase would have left." *Cheatham*, 910 F.3d at 767–68.

## B.

We likewise have little trouble concluding that Air Evac qualifies as an "air carrier." The ADA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Air ambulances transporting patients to hospitals fall squarely within that definition. Courts are agreed on this point. *See, e.g.*, *Cheatham*, 910 F.3d at 764; *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1266–68 (11th Cir. 2018); *Cox*, 868 F.3d at 904; *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1294 (N.D. Fla. 2018); *Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, *2 (W.D. Okla.); *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 933–34 (D.N.D. 2016); *Med-Trans. Corp. v. Benton*, 581 F. Supp. 2d 721, 732 (E.D.N.C. 2008); *PHI Air Med.*, 610 S.W.3d at 843. As are federal agencies. Air Evac holds a "Part 135" operating certificate from the Federal Aviation Administration ("FAA") allowing it to "operate as an air carrier and conduct common carriage operations." **ROA.1235.** The Department of Transportation ("DOT") also recognizes Air Evac as an "air carrier" under "Part 298," which grants it a license to operate as an air taxi. **ROA.1239.**

Nevertheless, Texas and the insurers insist that air ambulances are not "air carriers" under the ADA because Congress's purpose in enacting the ADA was to cover only commercial, passenger airlines. But we are governed by the text of the statute. *See, e.g.*, *Morales*, 504 U.S. at 383 ("[W]e . . . begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (quotations and citations omitted). Neither Texas nor the

8

insurers have "presented a single textual reason to support the argument that the broad language of the [ADA]'s express preemption provision should not include air-ambulance services." *Cox*, 868 F.3d at 904.

## C.

Finally, air ambulances "provide air transportation under this subpart"—that is, under subpart II of the amended Federal Aviation Act. 49 U.S.C. § 41713(b)(1). Air ambulance companies hold a registration issued by the Secretary of Transportation and are subject to certain economic regulations under subpart II. 14 C.F.R. pt. 298. That is all that is required under the plain text of § 41713(b)(1).

The State and the insurers argue that Air Evac is not sufficiently subject to subpart II because the Secretary has exempted air ambulances from the general requirement to hold a certificate of public convenience and necessity. But § 41713(b)(1) simply requires air carriers to "provide air transportation" under subpart II—it does not require air carriers to be certified under subpart II. Other courts that have examined this issue have reached the same conclusion. *See, e.g.*, *Cheatham*, 910 F.3d at 764–65 (agreeing "with Air Evac that the phrase 'under this subpart' includes all air carriers regulated by the Secretary of Transportation under subpart II, rather than those specifically certified under the subpart"); *Hughes Air Corp. v. Pub. Utils. Comm'n*, 644 F.2d 1334, 1338–39 (9th Cir. 1981) (holding that air carriers operating under an exemption still fell within the ADA's preemption provision). We agree that air ambulance providers like Air Evac provide air transportation under subpart II.

* * *

Accordingly, we hold that the ADA expressly preempts TWCA reimbursement regulations as applied to air ambulance services.

### III.

The TWCA reimbursement regulations are not saved by the McCarran–Ferguson Act. As relevant here, the McCarran–Ferguson Act shields from federal preemption those state laws that are "enacted . . . for the purpose of regulating the business of insurance," unless the federal statute "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). So the Act "precludes application of a federal statute in [the] face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and 'would invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alterations in original) (quoting *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993)).

It is undisputed that the ADA does not "specifically relate to" the business of insurance. So the sole issue is whether the TWCA was enacted "for the purpose of regulating the business of insurance"—that is, if it has the "'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." *Fabe*, 508 U.S. at 505 (quoting Black's Law Dictionary 1236, 1286 (6th ed. 1990)).

That requires determining whether the challenged provisions of the TWCA regulate "the relationship between the insurance company and the policyholder." *Id.* at 501 (quoting *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969)). The McCarran–Ferguson Act "assure[s] that the activities of insurance companies *in dealing with their policyholders* would remain subject to state regulation." *Nat'l Sec.*, 393 U.S. at 460 (emphasis added).

The TWCA regulations at issue here deal with the relationship between insurers and *providers*—namely, the providers of air ambulance services—and not the relationship between insurers and their beneficiaries.

Accordingly, the TWCA regulations are not shielded from federal preemption under the McCarran–Ferguson Act.

## A.

In *Group Life & Health Insurance Company v. Royal Drug Company*, 440 U.S. 205 (1979), the Supreme Court made clear that the "focus" of our inquiry is whether the insurance practice that is the subject of state regulation governs "the relationship between the insurance company and the policyholder." *Id.* at 216 (quoting *Nat'l Sec.*, 393 U.S. at 460). That relationship is "the core of the 'business of insurance.'" *Id.* at 215. *See also Fabe*, 508 U.S. at 493 ("We hold that the Ohio priority statute escapes pre-emption to the extent that it protects policyholders."). In addition, the Court identified two other criteria: "whether the practice has the effect of transferring or spreading a policyholder's risk," and "whether the practice is limited to entities within the insurance industry." *Union Lab. Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982) (citing *Royal Drug*, 440 U.S. at 211–12, 215, 231).

The TWCA regulations fail under all three criteria. *See, e.g.*, *PHI Air Med.*, 610 S.W.3d at 876–77 (Green, J., dissenting) (concluding that the TWCA regulations fail under all three factors identified in *Royal Drug* and *Pireno*).

To begin with, the TWCA regulations govern the relationship between insurers and providers, not insurers and insureds. So the regulations do not involve the "business of insurance" under the first criteria.

The Court reached precisely the same conclusion under similar facts in *Royal Drug*. It held that an insurer's agreement to reimburse pharmacies for the cost of prescription drugs if the pharmacies offered the drugs to the insurer's policyholders for $2 did not involve the "business of insurance." *Royal Drug*, 440 U.S. at 212–14. To conclude otherwise would "confuse the

obligations of [the insurer] under its insurance policies"—which involved the insurer–insured relationship—"and the agreements between [the insurer] and the participating pharmacies, which serve only to minimize the costs [the insurer] incurs in fulfilling its underwriting obligations." *Id.* at 213. The defining feature of the insurer–insured relationship is the exchange of insurance premiums in order to obtain medical benefits. The particulars of any exchange between insurers and pharmacies are merely ancillary features that are not part of the "business of insurance." And even though any cost savings might be passed on to policyholders in the form of reduced premiums, individual beneficiaries were "basically unconcerned" with any specific business arrangements between the insurer and the pharmacy, so long as the beneficiaries received the promised benefits. *Id.* at 214. As the Court put it, McCarran–Ferguson "exempts the 'business of insurance' and not the 'business of insurance companies.'" *Id.* at 217. "It is next to impossible to assume that Congress could have thought that agreements (even by insurance companies) which provide for the purchase of goods and services from third parties at a set price are within the meaning of that phrase [i.e. 'business of insurance']." *Id.* at 230.

By the same logic, the TWCA regulations challenged here likewise do not involve the relationship between the insurer and the insured. As in *Royal Drug*, the regulations help reduce costs to the workers' compensation insurance carrier. But employers and employees are "basically unconcerned" with how the insurer structures its payments or how much any single service provider is paid. *Id.* at 214. After all, the amount the insurer pays the provider is not a benefit to the insured. In sum, the focus of the TWCA regulations is on the relationship between insurer and provider, not insurer and insured.

The insurers here try to avoid *Royal Drug* by contending that the TWCA reimbursement cap is "critical to the spreading of risk" by limiting

the overall liabilities of insurers.  But that argument proves too much.  If the insurers are right, then "almost every business decision" would be part of the "business of insurance," because virtually every business decision has "some impact" on premium amounts and policy issuance. *Id.* at 216–17.  Yet this is exactly the type of downstream effect that the Supreme Court has placed outside the "business of insurance."  After all, "[s]uch cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the 'business of insurance.'" *Id.* at 214.

The TWCA regulations also fail under the two remaining criteria. Reimbursement arrangements between insurers and providers do not meaningfully affect the allocation of risk between insurer and insured.  The arrangement may help limit the insurer's costs, but it does not substantially affect the transfer of risk from the insured to the insurer.  Nor is the subject of the regulations "limited to entities within the insurance industry." *Pireno*, 458 U.S. at 129.  Air Evac is an air ambulance company, not an insurance company.

### B.

For their part, Texas and the insurers contend that the three criteria set forth in *Royal Drug* and *Pireno* apply in cases involving the application of certain enumerated federal antitrust statutes, and have only limited applicability to other federal laws like the ADA. *See* 15 U.S.C. § 1012(b).

But nothing in the text of the McCarran–Ferguson Act suggests that we should give the term "business of insurance" a different meaning when it comes to applying the Act to other federal statutes like the ADA.  "[W]e 'cannot imagine that "business of insurance" could have two different meanings in the same statutory subsection.'" *Bailey*, 889 F.3d at 1273 n.30

(quoting *Blackfeet Nat'l Bank v. Nelson*, 171 F.3d 1237, 1246 n.13 (11th Cir. 1999)).

Accordingly, our court has applied the *Royal Drug–Pireno* framework to federal statutes other than the enumerated antitrust provisions. *See Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493–94 (5th Cir. 2006); *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590–91 (5th Cir. 1998).

\* \* \*

We hold that the TWCA regulations concerning the reimbursement of air ambulance providers like Air Evac are preempted by the ADA, and are not saved by the McCarran–Ferguson Act. Accordingly, we affirm.