Nos. 117,903,
117,904,
117,905,
117,906

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EAGLEMED, LLC,
*Appellee*,

v.

TRAVELERS INSURANCE,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Supremacy Clause of Article VI of the United States Constitution establishes the doctrine of federal preemption. It invalidates state laws and actions that interfere with or are contrary to federal law.

2.

Federal preemption is ultimately a question of congressional intent. In determining whether federal preemption applies in a given case, courts must first look to the language of the federal preemption statute to determine the intent of Congress. Because federal preemption involves an interpretation of law, judicial review is unlimited.

3.

Express preemption applies when Congress makes its intent known through explicit statutory language.

4.

The United States Congress enacted the Airline Deregulation Act in 1978 to deregulate the airline industry and encourage efficiency, innovation, and low prices through competitive market forces. The Airline Deregulation Act expressly preempts state regulation related to a price, route, or service of an air carrier.

5.

The preemption provision of the Airline Deregulation Act is to be interpreted broadly to include enforcement actions taken by states that have a connection with or reference to prices, routes, or services of an air carrier. An air ambulance is an air carrier covered by the provisions of the Airline Deregulation Act.

6.

Once the intent of Congress to preempt state law is established, courts must next look to the scope of the federal preemption.

7.

The Kansas Workers Compensation Act mandates that providers of services and materials are bound by the fee schedule approved by the Director of the Division of Workers Compensation.

8.

The Director of the Division of Workers Compensation generally has the authority under K.S.A. 2017 Supp. 44-510j to resolve disputes between a provider and a self-insured employer or an employer's insurance carrier over a bill for services rendered for the care and treatment of an employee.

9.

Regarding air ambulance services, the 2012 fee schedule provided that fees "will be limited to usual and customary charges as per 49 U.S.C., Section 41713(b) of the Federal Aviation Act." However, 49 U.S.C. § 41713(b) (2012) offers no guidance in determining the "usual and customary" amount to be charged for air ambulance services. A determination of the "usual and customary" amount to be charged for the services provided in the air ambulance industry falls within the type of matters related to the price of air carriers that Congress intended to expressly preempt.

10.

Given the express preemption provision in the Airline Deregulation Act, whether the Medicare fee schedule applicable to air ambulance transport services should be applied to non-Medicare patients receiving services from an air ambulance provider is not a question to be answered by a state agency or state courts.

11.

The Director of the Division of Workers Compensation has no authority under the express preemption provision of the Airline Deregulation Act to determine the "usual and customary" charges air ambulance providers charge for their services or to otherwise make decisions related to the reasonableness of the price charged by an air ambulance provider.

Appeal from Workers Compensation Board. Opinion filed June 15, 2018. Affirmed in part, reversed in part, and remanded with directions.

*William L. Townsley*, *Lyndon W. Vix*, and *Nathaniel T. Martens*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*J. Phillip Gragson*, of Henson, Hutton, Mudrick, Gragson and Vogelsberg, LLP, of Topeka, and *Joshua L. Fuchs*, of Jones Day, of Houston, Texas, for appellee.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

BRUNS, J.:  This is a consolidated appeal of four workers compensation cases arising out of a fee dispute between EagleMed, LLC (EagleMed)—an air ambulance service provider—and Travelers Insurance (Travelers)—a workers compensation insurance carrier. Although Travelers admits that it provides coverage, it contends that the amounts charged by EagleMed for transporting the four injured workers by air ambulance are unreasonable. On appeal, both parties agree the federal Airline Deregulation Act of 1978 expressly preempts actions taken by states that have a connection to the prices charged by air carriers—including air ambulances. However, they disagree on the scope of the federal preemption as well as its application in these workers compensation cases.

We find that preemption under the Airline Deregulation Act is express, broad, and sweeping. We also find that Congress intended for market forces—not state agencies—to determine the prices charged by air carriers. Because an air ambulance provider is an air carrier under the Act, we conclude that federal preemption prevents the Division of Workers Compensation from making any decisions relating to the prices charged by such providers. Thus, we affirm in part, reverse in part, and remand with directions that the fee dispute proceeding commenced under K.S.A. 2017 Supp. 44-510j be dismissed.

FACTUAL AND PROCEDURAL HISTORY

EagleMed is an accredited critical care transport provider operating a fleet of medically equipped aircraft in Kansas and other states. The aircraft—commonly called air ambulances—include both helicopters and airplanes that are furnished with supplies and equipment necessary for providing in-flight medical care for patients. The air ambulances are also staffed with flight crews that include pilots, paramedics, and nurses. The flight crews are on-call 24 hours a day to be available to respond to medical

4

emergencies—often in rural areas. They also transport patients from smaller community hospitals to larger medical centers that can provide a higher level of patient care.

This appeal arises out of four workers compensation cases. Each of the workers compensation cases arises out of the air ambulance services provided by EagleMed to workers who were injured during the course of their employment at various times between March and June 2013. Each of the injured workers was transported by air ambulance from hospitals in rural Kansas to medical facilities in Wichita or Garden City. In each instance, Travelers was the workers compensation insurance carrier for the injured worker's employer.

EagleMed submitted invoices to Travelers for air ambulance services rendered to the four injured workers in amounts ranging from $21,597.27 to $33,042.95. The amount charged differed from worker to worker depending on the miles flown as well as the medical services provided by the flight crew en route. After receiving the invoices, Travelers challenged the amount billed and offered to pay EagleMed a lower amount based on the Medicare fee schedule applicable to air ambulance transport services. However, this offer was not accepted and EagleMed initiated a fee dispute proceeding with the Director of the Division of Workers Compensation under K.S.A. 2017 Supp. 44-510j.

From the outset of the proceedings, EagleMed and Travelers agreed that the Airline Deregulation Act of 1978 expressly preempts Kansas workers compensation law as it relates to setting prices to be charged by air ambulance providers. However, EagleMed and Travelers disagree about the scope of the federal preemption. In particular, they disagree over the role that the Division of Workers Compensation can play—if any—in resolving their fee dispute.

Initially, a hearing officer determined that the Division of Workers Compensation had the authority to resolve the fee dispute between EagleMed and Travelers. After noting the express preemption provision in the Airline Deregulation Act, the hearing officer found the doctrine of "reverse preemption" to be applicable to these cases. The hearing officer based his decision on the McCarran-Ferguson Act, 15 U.S.C. § 1011 (2012) et seq., which generally grants States the power to regulate the business of insurance.

Both parties requested review of the hearing officer's decision by the Kansas Workers Compensation Appeals Board. In reversing the hearing officer's decision, the Appeals Board concluded that "the [Workers Compensation] Fee Schedule is preempted by the [Airline Deregulation Act] and the [McCarran-Ferguson Act] does not reverse-preempt the [Airline Deregulation Act] in this instance." The Appeals Board noted that the workers compensation fee schedule set no fee for air ambulance services but simply referred to the Airline Deregulation Act, which "sets no pricing for air ambulance services." Although its directions were unclear, the Appeals Board remanded the fee dispute to the hearing officer for further proceedings.

On remand, the hearing officer found that the Division of Workers Compensation is

"without authority to set the rate of payment for air ambulance services in workers compensation claims, either through the rate-setting regulatory process or through administrative decision rendered in a specific case regarding whether contested charges are reasonable and necessary. In either course of action, the state is setting the 'price . . . of an air carrier,' and such action is expressly preempted by the Airline Deregulation Act."

6

Still, the hearing officer ordered Travelers to pay EagleMed the full amount charged for transporting the four injured workers. Shortly thereafter, Travelers sought review of the hearing officer's order by the Appeals Board.

The Workers Compensation Appeals Board found that it lacked jurisdiction to determine if the Medicare fee schedule applicable to air ambulance transport services should be applied in workers compensation cases. Moreover, the Appeals Board found that the Division of Workers Compensation "does not have the jurisdiction to make any ruling on the reasonableness of air ambulance charges that has the effect of reducing the amount owed to EagleMed." Thus, the Appeals Board affirmed the order of the hearing officer and Travelers filed a timely notice of appeal.

ANALYSIS

*Federal Preemption of State Law*

The Supremacy Clause of Article VI of the United States Constitution establishes the doctrine of federal preemption:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

Consequently, the Supremacy Clause invalidates state laws and actions that interfere with or are contrary to federal law. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011); *Wichita Terminal Ass'n v. F.Y.G. Investments, Inc.*, 48 Kan. App. 2d 1071, 1078, 305 P.3d 13 (2013).

7

Whether federal preemption exists and the scope of the preemption are questions of congressional intent. See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992); see also *Goodspeed Airport v. East Haddam Inland Wetlands*, 634 F.3d 206, 210-11 (2d Cir. 2011). In determining whether Congress intended for federal preemption to apply in a given case, we must first look to the language of the preemption statute. See *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996). Because federal preemption involves an interpretation of law, our review is unlimited. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, Syl. ¶ 18, 296 P.3d 1106 (2013); see also *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 691 n.3 (9th Cir. 2011) (Because it is a question of law, we review de novo a district court's conclusion about the extent of federal preemption.).

The Kansas Supreme Court has identified several categories and subcategories of federal preemption:

> "Broadly speaking, a preemption analysis divides into two principal categories: express and implied preemption. Implied preemption is further divided into two analytical subcategories: field preemption and conflict preemption. Then, yet a third strata of analytical subcategories is used when examining claims of conflict preemption: per se conflict and obstacle preemption. [Citations omitted.] Even though it is analytically helpful to consider the relationship of these categories, it must be remembered that these analytical categories are not 'rigidly distinct.' *English*, 496 U.S. at 79 n.5. For example, 'field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation.' *English*, 496 U.S. at 79 n.5." *Board of Miami County Comm'rs*, 292 Kan. at 294-95.

In the present appeal, we are dealing with an issue of express federal preemption because Congress has made "its intent known through explicit statutory language." 292 Kan. at 295 (citing *English v. General Electric Co.*, 496 U.S. at 79, 110 S. Ct. 2270). Even so, even in cases of express preemption, courts must also look to the scope of the

8

preemption to determine whether the state action "sufficiently interferes with federal regulation [such] that it should be deemed pre-empted." *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 107, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992); see also *Goodspeed Airport*, 634 F.3d at 210-11. Ultimately, in evaluating the scope of federal preemption in a particular case, "'[t]he purpose of Congress is the ultimate touchstone.'" *Medtronic, Inc.*, 518 U.S. at 485 (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 11 L. Ed. 2d 179 [1963]).

*Airline Deregulation Act of 1978*

In 1978, the United States Congress enacted the Airline Deregulation Act (ADA) to deregulate the airline industry and encourage "'efficiency, innovation, and low prices'" through competitive market forces. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992). The ADA expressly preempts a state from taking any action "having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1) (2012). The ADA defines the term "air carrier" as a citizen of the United States "undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2) (2012). Under the ADA, the United States Department of Transportation may "investigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice or an unfair method of competition." 49 U.S.C. § 41712(a) (2012).

In *Morales*, the United States Supreme Court noted the sweeping nature of the ADA preemption provision and found that it should be broadly construed to include state "actions having a connection with, or reference to, airline 'rates, routes, or services.'" 504 U.S. at 383-84. More recently, the Supreme Court also found that the ADA preempts common-law claims commenced under state law. *Northwest, Inc. v. Ginsberg*, 572 U.S. __, 134 S. Ct. 1422, 1430, 188 L. Ed. 2d 538 (2014). Likewise, states may not impose their own substantive standards with respect to prices, routes, or services of air carriers.

*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995).

Even so, the Supreme Court has "left room for state actions 'too tenuous, remote, or peripheral . . . to have pre-emptive effect.'" 513 U.S. at 224 (quoting *Morales*, 504 U.S. at 390). For example, in *Wolens*, the Supreme Court held that the Airline Deregulation Act preempted claims based on the Illinois Consumer Fraud and Deceptive Business Practices Act, but did not preempt a breach of contract action arising under state law alleging an air carrier violated an agreement that it entered into with one of its passengers. 513 U.S. at 228 (The ADA does not preempt actions seeking recovery "solely for the airline's alleged breach of its own, self-imposed undertakings."); see also *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062, 1064 (9th Cir. 2017) ( passenger's breach of contract claim against air carrier was not preempted by the ADA); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1264 (11th Cir. 2003) (employee's retaliatory discharge claim against air carrier was not preempted by the ADA). Therefore, we conclude that the ADA expressly preempts all state laws, regulations, and actions that may reasonably be said to have the effect of governing or regulating the prices charged, the routes maintained, and the services provided by air carriers, while permitting actions having a more remote or peripheral effect on air transportation.

*Application of Federal Preemption*

At the outset, we find EagleMed is an air carrier as defined by federal law. In particular, EagleMed is authorized to operate as an "air carrier" by the Federal Aviation Administration. Additionally, we note that several courts have found EagleMed and other air ambulance providers to be air carriers subject to the preemption provision of the ADA. See *EagleMed LLC v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017); *Schneberger v. Air Evac EMS*, *Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D. Okla. 2017); *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 938 (D.N.D. 2016); *Bailey v. Rocky*

*Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1381-82 (S.D. Fla. 2015); *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 732 (E.D.N.C. 2008); *Hiawatha Aviation v. Minn. Dept. of Health*, 389 N.W.2d 507, 509 (Minn. 1986); *Concovich v. Air Evac Ems, Inc.*, No. 15-CV-0294, 2016 WL 843276, at *2 (S.D. Ill. 2016) (unpublished opinion). Thus, because EagleMed is an air carrier, we conclude that the ADA preemption provision applies to its fee dispute that is the subject of this appeal.

Turning to the scope of the federal preemption, we again note that the United States Supreme Court has found the ADA's preemption provision to be "broad" and to have an "'expansive sweep'" to include all "[S]tate enforcement actions *having a connection with, or reference to, airline 'rates, routes, or services*.'" (Emphasis added.) *Morales*, 504 U.S. at 383-84. The Supreme Court also has held that the purpose of the ADA preemption provision is to leave matters related to price, route, and service "largely to the airlines themselves, and *not at all to States . . . .*" (Emphasis added.) *Wolens*, 513 U.S. at 228.

Here, the parties are involved in a dispute over the prices being charged by EagleMed in providing air ambulance services to four injured workers who were injured on the job. Travelers—in its capacity as the workers compensation insurance carrier for the workers' employer—argues that EagleMed's prices are unreasonably high. After being unable to settle their fee dispute, EagleMed sought to have the Director of the Division of Workers Compensation resolve the matter using the procedure set forth in K.S.A. 2017 Supp. 44-510j.

Generally, K.S.A. 2017 Supp. 44-510j authorizes the Director or his designee to resolve disputes in workers compensation cases between a provider and a self-insured employer or an employer's insurance carrier over a bill for services rendered for the care and treatment of an injured employee. The statute does not bar court action or other remedies that may apply. But the statute prohibits the filing of an action in any court by a

11

provider of services or materials provided until after final adjudication of any claim for compensation filed under K.S.A. 2017 Supp. 44-534. K.S.A. 2017 Supp. 44-510j(h).

In workers compensation cases, providers of services and materials are usually bound by the fee schedule approved by the Director under K.S.A. 2017 Supp. 44-510j(h). As for air ambulance services, the 2012 fee schedule simply provided that fees "will be limited to usual and customary charges as per 49 U.S.C., Section 41713(b) . . . ." Unfortunately, as the Appeals Board noted, 49 U.S.C. § 41713(b)—which is the ADA preemption provision—offers no guidance in determining the "usual and customary" amount to be charged for air ambulance services.

The Kansas Workers Compensation Act does define the terms "usual charge" and "customary charge" in K.S.A. 2017 Supp. 44-508. The term "usual charge" is defined as "the amount most commonly charged by health care providers for the same or similar services." K.S.A. 2017 Supp. 44-508(s). Moreover, the term "customary charge" is defined to mean the "usual rates or range of fees charged by health care providers in a given locale or area." K.S.A. 2017 Supp. 44-508(t).

We are mindful that the purpose of the ADA is to deregulate air carrier prices, allowing them to be shaped by market forces and not by regulators. To determine the "usual and customary" charges for air ambulance services in using the definitions set forth in the Kansas Workers Compensation Act, the Director or his designee would need to resolve several questions. First, the Director would need to decide the amount most commonly charged by other air ambulance services "for the same or similar services." Second, the Director would need to decide the "usual rates or range of fees" that are charged by air ambulance services in the area. We find that allowing the Director or his designee to make these types of determinations would entangle him in the very type of matters related to the prices of air carriers that Congress intended to preempt.

12

We find guidance in the case of *Schneberger v. Air Evac EMS, Inc.*, in which the United States District Court for the Western District of Oklahoma found that the determination of a "reasonable rate for air ambulance services . . . necessarily imposes upon [the air carrier] a rate that 'the State dictates' rather than one that 'the [air carrier] itself undertakes.'" *Schneberger*, 2017 WL 1026012, at \*5 (quoting *Wolens*, 513 U.S. at 233). Similarly, we find that allowing the Division of Workers Compensation to determine the "usual and customary" charge or a reasonable charge for air ambulance services in a K.S.A. 2017 Supp. 44-510j proceeding would result in the imposition of a price sanctioned by the State rather than one determined by market forces as Congress intended.

*Application of Medicare Fee Schedule*

In the alternative, Travelers contends that the Division of Workers Compensation should apply the Medicare fee schedule for air ambulance providers to EagleMed's bills in order to resolve the fee dispute between the parties. In 1965, Congress enacted the Medicare program as Title XVIII of the Social Security Act to provide health insurance coverage to the elderly. Congress later expanded the Medicare program to provide health insurance coverage to certain disabled persons.

Based on our review of the record on appeal, we find nothing to suggest that the four injured workers are eligible for Medicare coverage either because of age or because of disability. We also find that the issue of whether to use the Medicare fee schedule to establish the amount air ambulance services may charge to non-Medicare patients is related to the prices charged by air carriers. Moreover, this appears to be a public policy decision that should not be decided by state agencies or state courts. Thus, we also find this issue to be subject to federal preemption.

Finally, we note that the parties have included several policy arguments in their briefs. On the one hand, we recognize that air ambulances provide a valuable service—especially to those who live or work in rural communities. On the other hand, we recognize that there is a legitimate question about whether the fees charged by air ambulance providers are too high or unfair. Even so, given the ADA's express preemption provision, it is not the role of state courts or state agencies to become entangled in price disputes between air ambulance providers, insurance carriers, and or consumers. Instead, these are matters that should be presented to federal authorities.

As the Tenth Circuit noted in *Cox*:

"There is certainly some persuasive force to the . . . argument that federal preemption of state regulations in [the air ambulance] field is not serving the congressional purpose of 'further[ing] efficiency, innovation, and low prices' that was a motivating force behind the Airline Deregulation Act. *Morales*, 504 U.S. at 378, 112 S. Ct. 2031 (internal quotation marks omitted). (*See also* R. at 324 (citing a New York Times article which reported that the average Air Methods bill had increased from $17,262 in 2009 to more than $40,000 by 2014, while Air Methods' profits surged).) Due to the Airline Deregulation Act's broad preemption provision, states have been unable to 'prevent air ambulance service providers . . . from imposing exorbitant fees on patients who wrongly assume their insurance will cover the charges and are not in a position to discover otherwise' or engaging in other unscrupulous pricing behaviors that would not be sustainable in a true free market but are easily perpetuated in the warped market of air-ambulance services. *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 942 (D.N.D. 2016). . . .

"But when a statute contains an express preemption clause, 'we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' *Puerto Rico v. Franklin Cal. Tax-Free*, ___ U.S. ___, 136 S. Ct. 1938, 1946, 195 L. Ed. 2d 298 (2016) (internal quotation marks omitted). And when the statute's language is plain, our inquiry into preemption both begins and ends with the language of the statute itself. *Id.*

14

". . . [T]hese policy reasons cannot trump the plain language of the statute. . . . Any deficiency in the plain language of the statute or the scope of its coverage must be corrected by Congress, not this court." 868 F.3d at 903-04.

We note that the United States Court of Appeals for the Tenth Circuit has found that a federal district court went too far when it ordered the payment of an air ambulance carrier's charges in full. *Cox*, 868 F.3d at 905-06. As the Tenth Circuit pointed out, federal law establishes no duty for states to pay the air ambulance claims of injured workers. 868 F.3d at 906. As such, the *Cox* court concluded that the district court went beyond what was necessary to remedy the federal violation. 868 F.3d at 905-06. Similarly, we find that although the Appeals Board was correct in concluding that the Division of Workers Compensation does not have the authority "to make any ruling on the reasonableness of air ambulance charges," it went beyond what was necessary to remedy the situation when it ordered Travelers to pay the full amount charged by EagleMed because the State cannot make decisions regarding the price to be charged by an air carrier.

## CONCLUSIONS

In summary, we recognize that the ADA preemption provision is sweeping in nature. *Morales*, 504 U.S. at 383-84. In enacting the express preemption provision, Congress made clear its intent to broadly preempt state laws, regulations, and actions that relate to an air carrier's prices, routes, or services. In other words, Congress intended to leave such matters "not at all to States" but to the air carriers themselves or to the federal government. *Wolens*, 513 U.S. at 228. Accordingly, we conclude that the Division of Workers Compensation has no authority under the express preemption provision of the ADA to take any action to resolve the fee dispute between EagleMed and Travelers.

We, therefore, affirm the decision of the Workers Compensation Appeals Board in part and reverse it in part. Furthermore, we remand this matter to the Appeals Board with

15

directions to dismiss the fee dispute proceeding commenced pursuant to K.S.A. 2017 Supp. 44-510j. Nothing in this opinion should be deemed to limit the parties to pursue any other legal remedies they may have available to them to resolve their dispute.

Affirmed in part, reversed in part, and remanded with directions.