IN THE SUPREME COURT OF THE STATE OF KANSAS


Nos. 117,903
117,904
117,905
117,906


EAGLEMED, LLC,
*Appellee*,


v.


TRAVELERS INSURANCE,
*Appellant.*


SYLLABUS BY THE COURT


1.

Under the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., those providing health care services to injured workers are bound by medical fee schedules approved by the Director of the Division of Workers Compensation, who statutorily oversees these services to ensure costs, fees, and charges are fair, reasonable, and necessary. The Act authorizes the Director to resolve fee disputes between health care providers and an employer's insurance carrier when they cannot agree on charges for the care and treatment of injured workers.


2.

49 U.S.C. § 41713(b)(1) (2018) of the federal Airline Deregulation Act of 1978 recites in part that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service" of an air carrier providing air transportation. This federal law covers air ambulance services provided to a

1

worker for an injury compensable under the Kansas Workers Compensation Act, K.S.A. 44-501 et seq.

3.

Under the Supremacy Clause of Article VI, Clause 2 of the United States Constitution, state laws interfering with or contrary to federal law are invalid.

4.

49 U.S.C. § 41713(b)(1) does not require payment to air ambulance carriers providing services to injured workers covered by the Kansas Workers Compensation Act. That obligation, if any, must come from state law.

5.

The 2012 fee schedule approved by the Director of the Division of Workers Compensation requires billings for air ambulance services to be supportable by evidence that the charges are usual and customary. If factual disputes arise, they must be resolved under the Kansas Workers Compensation Act in a manner comporting with 49 U.S.C. § 41713(b)(1) of the federal Airline Deregulation Act of 1978.

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 79, 424 P.3d 532 (2018). Appeal from Workers Compensation Board. Opinion filed May 13, 2022. Judgment of the Court of Appeals affirming in part and reversing in part the Workers Compensation Board and remanding with directions is affirmed in part and reversed in part. Decision of the Workers Compensation Board is reversed, and the case is remanded with directions.

*William L. Townsley,* of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Lyndon W. Vix* and *Nathaniel T. Martens*, of the same firm*,* were with him on the briefs for appellant.

*Joshua L. Fuchs*, pro hac vice, of Jones Day, of Houston, Texas, and *J. Phillip Gragson*, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, of Topeka, argued the cause and were on the briefs for appellee.

*James D. Oliver* and *Sarah E. Stula*, of Foulston Siefkin LLP, of Overland Park, and *Dale Wainwright*, pro hac vice, and *Justin Bernstein*, pro hac vice, of Greenberg Traurig, LLP, of Austin, Texas, were on the brief for amicus curiae American Property Casualty Insurance Association.

*Aaron L. Kite*, of Kite Law Firm LLC, of Dodge City, was on the brief for amicus curiae Kansas Livestock Association Risk Management Services, Inc.

The opinion of the court was delivered by

BILES, J.: This is a consolidated workers compensation appeal arising from billing disputes between EagleMed, LLC, an accredited critical care transportation service operating a fleet of medically equipped aircraft, and Travelers Insurance, a workers compensation insurance carrier. The case has taken a tortuous path as the parties, a state review board, and a Court of Appeals panel grappled with federal law prohibiting states from enacting or enforcing any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." See 49 U.S.C. § 41713(b)(1) (2018). The practical problem concerns how—or even if—those charged with administering our workers compensation system can resolve disagreements like this one without violating federal law. So far, all have strained to fit a congressionally squared peg into the rounded hole available under state law.

The controversy starts with the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., which binds those providing health care services to injured workers, like EagleMed, to medical fee schedules approved by the Director of the Division of Workers

3

Compensation. See K.S.A. 2020 Supp. 44-510i(c). And state law requires the Director to oversee health care provider services to ensure costs, fees, and charges are "fair, reasonable and necessary." See K.S.A. 2020 Supp. 44-510i(c)(2). This supervision includes an administrative process to resolve billing disputes over care and treatment costs for injured workers. See K.S.A. 2020 Supp. 44-510j.

Yet federal law seems to set air ambulance services apart from the Division's usual—and more cost conscious—supervision. See *EagleMed LLC v. Cox*, 868 F.3d 893, 898, 907 (10th Cir. 2017) (holding federal law preempted Wyoming's workers compensation statute limiting air carriers to "reasonable" rates "not in excess of" a designated rate schedule). But see *Texas Mutual Insurance Co. v. PHI Air Medical, LLC*, 610 S.W.3d 839, 843 (2020) (holding "the ADA does not preempt Texas's general standard of fair and reasonable reimbursement as applied to air ambulance services, nor does it require that Texas compel private insurers to reimburse the full charges billed for those services"), *cert. denied* 141 S. Ct. 2565 (2021). So with an eye toward federal law, the Director approved a 2012 fee schedule providing air ambulance service reimbursements in Kansas "will be limited to usual and customary charges as per 49 U.S.C. Section 41713(b) of the Federal Aviation Act."

The struggle here focuses on what to make of this when neither the schedule nor the federal law it references defines "usual and customary charges." The Workers Compensation Appeals Board ultimately decided it had no jurisdiction to determine the reasonableness of air ambulance charges that would reduce the amount owed, so it made no factual determination whether the disputed billings were usual and customary charges. Instead, it just ordered Travelers to pay in full. *EagleMed, LLC v. Travelers Ins.*, No. 8,500,703, 2017 WL 2470942, at *6 (Kan. Work. Comp. App. Bd. 2017). But a Court of Appeals panel disagreed with that approach. It held the Board could not force Travelers to pay anything, so it remanded the case with directions to dismiss the dispute without

4

administrative resolution, presumably for the parties to fight this out somewhere else. *EagleMed, LLC v. Travelers Ins.*, 56 Kan. App. 2d 79, 91, 424 P.3d 532 (2018) ("Nothing in this opinion should be deemed to limit the parties to pursue any other legal remedies they may have available to them to resolve their dispute.").

We take a different tack, recognizing that one obvious legislative purpose for our state's workers compensation system is to protect both employers and employees from financial losses arising from work related injuries. See K.S.A. 2020 Supp. 44-501b(a) (directing the law "be applied impartially to both employers and employees in cases arising thereunder"). In our view, an administrative order blindly requiring Travelers—or any insurance company standing in an employer's place—to just pay an air carrier whatever it wants with no accountability conflicts with this legislative purpose and could put the agency's imprimatur on even a duplicitous billing. This undermines the interests of those who rely on our state's workers compensation system to care and treat injured workers.

By the same token, 49 U.S.C. § 41713(b)(1) (2018) requires something short of the agency's express regulation of air carrier pricing. And all agree Kansas must comport with 49 U.S.C. § 41713(b)(1) because under the Supremacy Clause of Article VI, Clause 2 of the United States Constitution, state laws interfering with or contrary to federal law are invalid. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011). But what, if anything, can squeeze into the remaining administrative space?

EagleMed suggests the 2012 fee schedule would not violate federal law if "usual and customary charges" are defined from the air carrier's sole perspective. In its view, interpreting the schedule this way prevents substituting a state agency's "own substantive standards" for the carrier's market-based judgment about its rates and services and would

5

not require it to accept a lower price based on state law considerations of "decency, fairness, or reasonableness." EagleMed may be right.

But the Board has yet to decide whether EagleMed's billings are "usual and customary charges" as the 2012 schedule specifies, so we are left to wonder whether other perspectives may exist to make the required factual determination. And deciding that will require the Board to reconcile compliance with 49 U.S.C. § 41713(b)(1) with the legislative purposes underlying our workers compensation system. See K.S.A. 2020 Supp. 44-501b(a); K.S.A. 2020 Supp. 44-510i(c)(1) (providing schedule of maximum fees "shall promote health care cost containment and efficiency with respect to the workers compensation health care delivery system, and shall be sufficient to ensure availability of such reasonably necessary treatment, care and attendance to each injured employee to cure and relieve the employee from the effects of the injury"). At one point, the Board appeared headed down this path when it instructed its hearing officer to determine "whether the charges made by EagleMed are usual and customary under the [federal] ADA." *EagleMed, LLC v. Travelers Ins.*, No. 8,500,703, 2016 WL 4067804, at *4 (Kan. Work. Comp. App. Bd. 2016). But that directive got sidelined as this fee dispute festered.

We return this case to the Board to make the factual findings intended by the 2012 fee schedule, as well as any other administrative decisions necessary to resolve the parties' disputes. As written, the schedule gives no hint that its purpose is to serve as an automatic rubber stamp for these bills as the Board's decision dictated. After all, federal law establishes no duty for states to pay air ambulance claims for services provided to injured workers. That obligation, if any, must come from state law. *Cox*, 868 F.3d at 906. Similarly, the schedule signals that the Board cannot be divorced from the statutory dispute resolution process as the Court of Appeals outcome would have it. The schedule's

plain language requires billings for air ambulance services to be supportable by evidence that the charges are usual and customary.

We reverse the panel's judgment directing the Board to dismiss this proceeding, as well as the Board's order that Travelers simply pay EagleMed in full. We remand the case to the Board to decide whether these charges are in fact "usual and customary" as the fee schedule envisions. In doing so, the Board will need to interpret this term in a manner that reflects both federal law and our state's legislative purposes—whether that interpretation is one advanced by the parties, or another chosen by the Board. This will then dictate what evidence is relevant to the required factual inquiry. Finally, we reject Travelers' argument that federal Medicare reimbursement rates apply to this dispute.

FACTUAL AND PROCEDURAL BACKGROUND

Four persons suffered work related injuries in separate incidents with separate employers. EagleMed's air ambulances provided each with transportation from rural hospitals to larger ones equipped to treat them. Their employers all carried workers compensation insurance through Travelers, but Travelers did not preapprove the flights. For its transportation services, EagleMed submitted invoices ranging from $21,597.27 to $33,042.95, depending on the claimed services and miles flown. Travelers conceded coverage but rejected the invoices as unreasonable. It offered reduced payments ranging from $4,704.07 to $8,010.67 based on its interpretation of what would be paid under federal Medicare reimbursement rates.

EagleMed initiated fee dispute proceedings with the Kansas Division of Workers Compensation. See K.S.A. 2020 Supp. 44-510j (fee dispute procedures). The Division consolidated the claims into a single action. EagleMed argued 49 U.S.C. § 41713(b)(1) required the Division to order Travelers to pay in full, while Travelers argued for reduced

7

payments using the Medicare schedule. The Division appointed a hearing officer, who determined the Division was free to establish reasonable and fair payment rates for air ambulance services without regard to 49 U.S.C. § 41713(b)(1). To get that result, the hearing officer interpreted the federal McCarran-Ferguson Act, which generally prohibits Congress from interfering with state laws regulating the business of insurance, as creating a "reverse preemption" that invalidated the ADA's air ambulance preemption. See 15 U.S.C. § 1012(b) (2018). The hearing officer reasoned the Kansas fee schedule for providers and dispute resolution provisions are integral parts of a broad and comprehensive administrative mechanism for regulating and taxing the business of workers compensation insurance. The hearing officer reserved judgment on what EagleMed could charge or what Travelers was responsible to pay.

Both parties appealed to the Workers Compensation Appeals Board, which reversed the hearing officer's decision. The Board held McCarran-Ferguson was inapplicable and remanded the matter to the hearing officer to decide "whether the charges made by EagleMed are usual and customary under the ADA." *EagleMed,* 2016 WL 4067804, at *4. In doing so, the Board observed the analytical quandary in reconciling the 2012 fee schedule with the ADA:

> "The 2012 Fee Schedule does not set a price for airline ambulance charges, other than directing us to the ADA. In turn, the ADA sets no pricing for air ambulance services. If the Board determined that the ADA preempts the Fee Schedule, we are left in the same predicament as if the Fee Schedule controlled the pricing for air ambulance service. The reasoning is circular—again, both our Fee Schedule and the ADA lead us to the same result—pricing is based on the ADA." 2016 WL 4067804, at *4.

When the case returned, the hearing officer made no factual determinations whether EagleMed's billings were "usual and customary charges." Instead, the hearing officer ruled the Division lacked authority to set any reasonable and necessary payment

8

rates for air ambulance services through either the rate-setting regulatory process or an administrative appeal proceeding. The hearing officer ordered EagleMed to be paid in full.

Travelers appealed again to the Board. This time, the Board held it lacked jurisdiction to decide whether the Medicare fee schedule could be applied to air ambulance rates in workers compensation cases, as Travelers argued, or "to make any ruling on the reasonableness of air ambulance charges that has the effect of reducing the amount owed to EagleMed." *EagleMed*, 2017 WL 2470942, at *6. The Board affirmed the hearing officer's order for Travelers to pay the full amount charged. In doing so, the Board rejected Travelers' argument that ADA preemption effectively binds EagleMed to the federal Medicare schedule, as well as Travelers' alternative claim that the Division could still review these charges to determine whether they are fair, reasonable, and necessary. "To do either," the Board explained, "would violate federal preemption through the ADA." 2017 WL 2470942, at *6.

Travelers sought judicial review. See K.S.A. 2020 Supp. 44-556(a) ("Any action of the board pursuant to the workers compensation act . . . shall be subject to review in accordance with the Kansas judicial review act by appeal directly to the court of appeals."). A Court of Appeals panel held the Division "has no authority under the express preemption provision of the ADA to take any action to resolve the fee dispute." *EagleMed,* 56 Kan. App. 2d at 91. And it held federal preemption meant the Board lacked authority to make Travelers pay anything. It remanded the case to the Board with instructions to dismiss the case without administrative resolution. 56 Kan. App. 2d at 91.

Unsatisfied, both parties sought this court's review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals

9

decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

DISCUSSION

EagleMed advances two main arguments: (1) the panel erred by concluding the ADA divests the Board of any jurisdiction to hear fee disputes involving air carriers, and (2) Kansas law and the ADA combine to entitle EagleMed to its "full billed charges." It contends, "Eliminating air ambulances from the Kansas workers'-compensation system will have enormous negative consequences for workers and employers in this State."

For its part, Travelers also argues the panel erred by holding federal preemption prohibits the Division from reviewing EagleMed's charges. But from its perspective, this error can be corrected by limiting EagleMed to an amount "mandated by federal law," which it argues is the Medicare fee schedule. Alternatively, Travelers contends the Division should be permitted to review EagleMed's billings to determine "whether those charges are usual and customary and/or reasonable." Travelers claims that without such relief EagleMed will be permitted to avoid "regulations designed to ensure fair and equitable billing practices by employing a business model designed to take advantage of Kansas employers and their workers compensation carriers who have absolutely no choice in accepting or declining EagleMed's services," and that will result in "no opportunity to negotiate for a fair and equitable price for those services."

Some context helps. First, we set out our standard of review. Next, we discuss the Kansas Workers Compensation Act, its fee dispute resolution process, and the 2012 fee schedule for air ambulance services. Then, we discuss the federal Airline Deregulation Act, and its attendant caselaw about how state administrators address air ambulance fees in its shadow. Finally, we explain why the ADA does not compel either the Board's

10

directive to pay EagleMed in full without first factually determining whether these billings represent "usual and customary charges" as the schedule provides, or the panel's decision to leave the parties to find alternative legal remedies and forums.

*Standard of review*

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., governs our review of the Board's administrative decision. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 513, 439 P.3d 291 (2019). The party challenging the Board's action—in this case, Travelers—bears the burden of proving that action's invalidity. K.S.A. 77-621(a)(1); *Graber*, 309 Kan. at 513.

K.S.A. 77-621(c) limits the basis for judicial relief from an agency action, but neither the panel nor Travelers specified which subsection it considered controlling. From the arguments, we infer these subsections apply:  (c)(1) ("[t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied"), (c)(3) ("the agency has not decided an issue requiring resolution"), (c)(4) ("the agency has erroneously interpreted or applied the law"), (c)(5) ("the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure"), (c)(7) (agency action based on factual determinations not supported to the appropriate standard of proof by evidence that is substantial "when viewed in light of the record as a whole"), and/or (c)(8) ("the agency action is otherwise unreasonable, arbitrary or capricious"). We decide this appeal with these subsections in mind.

In any event, interpretation of the Workers Compensation Act and the administrative regulations promulgated to implement the Act's provisions are questions of law subject to de novo review. *Hawkins v. Southwest Kansas Co-op Svc.*, 313 Kan. 100, 107, 484 P.3d 236 (2021); *Graber*, 309 Kan. at 513; see also *May v. Cline*, 304 Kan.

11

671, 675, 372 P.3d 1242 (2016) (courts owe no deference to agencies' interpretations of their own administrative regulations). And for any factual analysis, in *Hanson v. Kansas Corp. Comm'n*, 313 Kan. 752, 763, 490 P.3d 1216 (2021), we recently clarified:

> "When conducting the factual analysis, [K.S.A. 77-621(d)] requires a reviewing court to assess the evidence both supporting and contradicting the agency's findings, examine the agency's credibility determinations, and review the agency's explanation as to why the evidence sustains its findings. And even though subsection (d) demands a reviewing court look at contradicting evidence and assess the agency's credibility decisions, it nevertheless instructs that '*the court shall not reweigh the evidence or engage in de novo review*.' (Emphasis added.) K.S.A. 77-621(d). See generally *Frick Farm Properties, L.P. v. State Dep't of Agric., Div. of Water Res.*, 289 Kan. 690, 709, 216 P.3d 170 (2009) ('An appellate court views all the evidence in a light most favorable to the prevailing party, and it does not reweigh competing evidence or assess the credibility of witnesses. This court must accept all evidence and inferences that support or tend to support the findings as true, and this court must disregard all conflicting evidence.'). [Citation omitted.]"

*The Workers Compensation Act and the 2012 fee schedule*

Our workers compensation system covers all injuries suffered by employees arising out of and in the course of their employment. K.S.A. 2020 Supp. 44-501b(b). The employer must provide medical, surgical, and hospital treatment, including ambulance, "as may be reasonably necessary to cure and relieve the employee from the effects of the injury." K.S.A. 2020 Supp. 44-510h(a).

Providers of services to injured workers typically are bound by a schedule of "maximum fees" approved by the Director. K.S.A. 2020 Supp. 44-510i(c). This schedule effectively regulates the prices charged by medical providers in the workers compensation context. Under the Act,

12

"Any health care provider, nurse, physical therapist, any entity providing medical, physical or vocational rehabilitation services or providing reeducation or training pursuant to K.S.A. 44-510g, and amendments thereto, medical supply establishment, surgical supply establishment, ambulance service or hospital which accept the terms of the workers compensation act by providing services or material thereunder *shall be bound by the fees approved by the director* and no injured employee or dependent of a deceased employee shall be liable for any charges above the amounts approved by the director." (Emphasis added.) K.S.A. 2020 Supp. 44-510j(h).

In tasking the Director with creating the fee schedule, state law gives guidance. The schedule must be

"reasonable, shall promote health care cost containment and efficiency with respect to the workers compensation health care delivery system, and shall be sufficient to ensure availability of such reasonably necessary treatment, care and attendance to each injured employee to cure and relieve the employee from the effects of the injury." K.S.A. 2020 Supp. 44-510i(c)(1).

K.S.A. 2020 Supp. 44-510i(c)(2) and (3) further provide:

"(2) In every case, all fees, transportation costs, charges under this section and all costs and charges for medical records and testimony shall be subject to approval by the director and shall be limited to such as are *fair, reasonable and necessary*. The schedule of maximum fees shall be revised as necessary at least every two years by the director to assure that the schedule is current, reasonable and fair.

"(3) Any contract or any billing or charge which any health care provider, vocational rehabilitation service provider, hospital, person or institution enters into with or makes to any patient for services rendered in connection with injuries covered by the workers compensation act or the fee schedule adopted under this section, which is or may

13

be in excess of or not in accordance with such act or fee schedule, is unlawful, void and unenforceable as a debt." (Emphasis added.)

If a dispute arises about the fees for services, the parties resolve their differences using a statutory procedure. See K.S.A. 2020 Supp. 44-510j. A claim must be filed with the Division of Workers Compensation, and the Director holds an informal hearing. K.S.A. 2020 Supp. 44-510j(a)(1), (c). At this stage, the Director tries to facilitate settlement. See K.S.A. 2020 Supp. 44-510j(c). If that fails, the Director schedules a formal hearing to decide whether the provider has made excessive charges or provided unjustified treatment. K.S.A. 2020 Supp. 44-510j(d). A party unsatisfied with the hearing process can seek review from the Workers Compensation Appeals Board. See K.S.A. 2020 Supp. 44-551(l)(1). If the dispute continues, a party can seek judicial review of the Board's decision. K.S.A. 2020 Supp. 44-556(a).

K.S.A. 2020 Supp. 44-510j(h) provides that no collection action can be filed in any court by a health care provider or other provider of services for payment until after final adjudication of the underlying workers compensation case. But the statute does not prohibit civil actions before the fee dispute is resolved in so many words.

The Act also does not specifically mention air ambulance services, although the 2012 fee schedule addressed them. It states:  "GENERAL: Reimbursement for ambulance services (ground only) will be limited to the emergency medical service's billed charge, less 10%. Air ambulance services will be limited to usual and customary charges as per 49 U.S.C., Section 41713(b) of the Federal Aviation Act."

As mentioned, the schedule does not define the phrase "usual and customary charges." Nor does the referenced federal statute, which provides,

14

"(b) Preemption.--(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713.

The 2012 fee schedule for air ambulance services differs from those that came before it. Its immediate predecessor from 2011 read: "Reimbursement for ambulance services (ground only) will be limited to the emergency medical service's billed charge, less 15%. Air ambulance services will be limited to *billed charges* as per 49 U.S.C., Section 41713(b) of the Federal Aviation Act." (Emphasis added.) Kansas Workers Compensation Division, 2011 Schedule of Medical Fees, 164 (available at https://www.dol.ks.gov/documents/20121/101805/med_fees_2011.pdf/51bf29f7-f6a3-68b0-117e-5c2f7c6b3c78?t=1614320837095). And the 2010 fee schedule limited "ambulance services (both ground and air transportation) . . . to 125% of the ambulance fee(s) as listed and/or defined *in the 2009 Medicare Ambulance Fee Schedule*." (Emphasis added.) Kansas Workers Compensation Division, 2010 Schedule of Medical Fees, 167 (available at https://www.dol.ks.gov/documents/20121/101805/med_fees_2010.pdf/f9ba1afd-c48e-69fa-d402-6cd241297af1?t=1614320837095).

Parenthetically, we note the fee schedules from 2014 forward establish a different reimbursement measurement for air ambulance fees than the 2012 schedule. See Kansas Workers Compensation Division, 2019 Schedule of Medical Fees, 376 (available at https://www.dol.ks.gov/documents/20121/101805/2019-schedule-of-medical-fees.pdf/5a17b3d2-4e3b-56f2-d9e1-7dbe8e75912a?t=1614320837097) ("Reimbursement for air ambulance services are limited to the amount most commonly charged for the

same or similar services in a given area . . . ."). The meaning and validity of those provisions are not before us.

*The federal Airline Deregulation Act of 1978 and its preemptive effect*

Congress revamped the economic regulation of interstate airline rates, routes, and services in 1978. It enacted the ADA "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services." Pub. L. No. 95-504, 92 Stat. 1705, 1705 (1978). To ensure states and their political subdivisions do not disrupt these goals, Congress passed what became 49 U.S.C. § 41713(b)(1), which is the preemption provision argued here. For purposes of this federal statute, the ADA defines "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2) (2018).

No one disputes 49 U.S.C. § 41713(b) covers EagleMed and its air ambulance services. See *Cox*, 868 F.3d at 904 (holding air ambulances included within broad language of the ADA). But as the Tenth Circuit observed, "There is certainly some persuasive force to the . . . argument that federal preemption of state regulations in this field is not serving the congressional purpose of 'further[ing] efficiency, innovation, and low prices' that was a motivating force behind the Airline Deregulation Act." 868 F.3d at 903 (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 378, 112 S. Ct. 2031, 119 L. Ed. 2d 157 [1992]).

To be sure, the ADA preemption provision's intersection with the 2012 fee schedule implicates a constitutional question. The Supremacy Clause of the United States Constitution establishes that federal law is "the supreme Law of the Land," so any state laws interfering with or contrary to federal law are invalid. U.S. Const. art. VI, cl. 2;

16

*Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011). If the fee schedule is interpreted in a way that interferes with or conflicts with the ADA's preemption of state laws relating to the price, route, or service of an air carrier, then it cannot be enforced against EagleMed. See *Cox*, 868 F.3d 893. The United States Supreme Court has construed the "relating to" phrase in the ADA to "express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383. A state law claim is preempted if it "has 'a connection with, or reference to, airline' prices, routes, or services." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284, 134 S. Ct. 1422, 188 L. Ed. 2d 538 (2014). Preemption reaches more than just provisions "actually prescribing rates, routes, or services." *Morales*, 504 U.S. at 385. It also applies to provisions that have a "significant effect" on them. 504 U.S. at 388.

But the ADA's preemption of state law claims connected to airline pricing does not broadly prohibit air carriers' claims for reimbursement from being litigated in state forums. See *American Airlines v. Wolens*, 513 U.S. 219, 232-35, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995) (holding preemption did not bar breach of contract action filed against airline in state court over subject matter related to airline's price or services); *Cox*, 868 F.3d at 906-07 (holding state law would determine how officials would administer workers compensation program given preemption of substantive limits on air ambulance rates); *Texas Mutual Insurance Co. v. PHI Air Medical LLC*, 610 S.W.3d 839, 855 (Tex. 2020) (holding state workers compensation scheme's "fair and reasonable reimbursement standard" was not preempted as applied to air ambulance because record did not show standard affected prices), *cert. denied* 141 S. Ct. 2565 (2021). But see *PHI Air Medical, LLC v. Corizon, Inc.*, 628 S.W.3d 460, 471 (Tenn. App. 2021) (holding air ambulance provider's unjust enrichment claim against health care contractor responsible for injured prisoner who received services was preempted by ADA).

17

So as a general proposition, nothing in the ADA prohibits our Legislature from requiring a fee dispute to be litigated first within the administrative framework—though if the fee schedule is preempted the question may arise whether the Legislature would have still intended the fee dispute framework to apply. See *Air Methods/Rocky Mountain Holdings, LLC v. State ex rel. Department of Workforce Services, Workers' Compensation Division*, 432 P.3d 476, 486-87 (Wyo. 2018) (addressing whether preempted limit on air ambulance reimbursement rate was severable from remainder of workers' compensation law requiring State to pay billed charges). This puts our focus today on two questions:  Does applying the 2012 fee schedule within our state law framework necessarily amount to enforcing a law related to a price of an air carrier, as the panel held? And if not, must the agency's order be affirmed?

*Reconciling the 2012 fee schedule with federal law*

"The ADA's preemption clause . . . read together with the [Federal Aviation Act's] saving clause, ['preserving "the remedies now existing at common law or by statute"'], stops States from imposing their own substantive standards with respect to rates, routes, or services . . . ." *Wolens*, 513 U.S. at 232. The fee schedule will be preempted if it expressly references air carrier prices and establishes binding requirements. See *Texas Mut. Ins. Co.*, 610 S.W.3d at 848.

But here, neither is present. An answer to our first question as to whether the 2012 fee schedule crosses over into forbidden territory cannot be reached until the schedule applies to a given case. So this controversy cries out for adherence to the schedule's terms—administrative fact-finding on whether EagleMed's billings seek to recoup "usual and customary charges" in accordance with federal law. And there is nothing in the record establishing that simply engaging in this fact-finding would either directly impose a substantive standard with respect to EagleMed's "rates, routes, or services" or otherwise

18

have any "significant effect" on them to trigger preemption. See *Morales*, 504 U.S. at 385, 388. In our view, this vacuum makes the preemption discussion an exercise in speculation. Yet both the Board and the panel premised their rationales on accepting preemption of the schedule as a foregone conclusion and, in doing so, ended up at opposite ends of the spectrum.

For example, the Board came to its conclusion without considering the 2012 textual revision to the fee schedule that substituted "usual and customary charges" for the 2011 schedule's prior reference to "billed charges." Its result effectively construed the fee schedule as a rubber stamp of approval for the air carrier's billed charges instead of examining what would have been "usual and customary charges." *EagleMed, LLC*, 2016 WL 4067804, at *4. In this respect, the Board erred because a change in text such as this necessarily signals an analytical shift in the criteria to be used for this administrative decision making. See *Board of Sedgwick County Comm'rs v. Action Rent To Own, Inc.*, 266 Kan. 293, 304, 969 P.2d 844 (1998) ("When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment."); cf. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 773, 69 P.3d 1087 (2003) ("'[W]hen a statute is ambiguous, amendment of the statute may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law.'").

Similarly, the Court of Appeals panel created its own preemption problems by grafting generic statutory definitions from the Workers Compensation Act onto the 2012 schedule—even though the schedule itself expressly references the ADA as its guidepost. See *EagleMed, LLC v. Travelers Ins.*, 56 Kan. App. 2d 79, 88, 424 P.3d 532 (2018) (noting "[t]he Kansas Workers Compensation Act does define the terms 'usual charge' and 'customary charge'"; holding "allowing the Director" to employ the statutory definitions to the instant case "would entangle him in the very type of matters related to

the prices of air carriers that Congress intended to preempt"). And since the 2012 fee schedule refers only to the ADA, there is no reason to associate "usual and customary charges" with any state law definitions under K.S.A. 2020 Supp. 44-508(s) (defining "usual charge" as "the amount most commonly charged by healthcare providers for the same or similar services") and K.S.A. 2020 Supp. 44-508(t) (defining "customary charge" as the "usual rates or range of fees charged by healthcare providers in a given locale or area") or the general state law directive to set "fair, reasonable and necessary" fees under K.S.A. 2020 Supp. 44-510i(c)(2). A better view would be to see the schedule's linkage to the ADA as evidence of the Director's intent to avoid any construction that might create a preemption problem. The panel did just the opposite.

Finally, the textual revisions preceding the 2012 change belie Travelers' insistence that the federal Medicare schedule somehow can still play a role in this analysis. The 2011 change expressly removed Medicare references from the schedule, yet Travelers would have the Board and the courts ignore that history and plain language. We agree with the panel that Medicare reimbursement rates are inapplicable to what is called for by the 2012 schedule, although we base our conclusion on the schedule's historical development and not the preemption principles relied on by the panel. See *EagleMed*, 56 Kan. App. 2d at 89.

CONCLUSION

We need not precisely construe the term "usual and customary" or decide any preemption question without first having the Board's administrative fact-finding about EagleMed's billed charges and its application of the facts to the 2012 fee schedule. But we do hold the 2012 fee schedule requires billings for air ambulance services to be supportable by evidence that the charges are usual and customary. The Board's decision requiring Travelers to pay the billed amounts must be reversed because the decision is not

20

supported by substantial competent evidence in light of the record as a whole. See K.S.A. 77-621(c)(7), (d); *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 513, 439 P.3d 291 (2019); *Pener v. King*, 305 Kan. 1199, 1205, 391 P.3d 27 (2017). The evidentiary record contains nothing showing these charges meet any permutation of the "usual and customary" standard.

On remand, it will be necessary for the Board to provide guidance to the parties as to the evidence expected for the Board to make its determinations. In other words, the Board will need to tell the parties whether defining "usual and customary charges" can be done only as EagleMed suggests through the air carrier's sole perspective, or whether there is an alternative that better reflects both federal law and the statutory purposes for our workers compensation system.

Judgment of the Court of Appeals is affirmed in part and reversed in part. Decision of the Workers Compensation Board is reversed, and the case is remanded with directions.

WALL AND STANDRIDGE, JJ., not participating.
PATRICK D. MCANANY, Senior Judge, assigned.[1]
MICHAEL J. MALONE, District Judge Retired, assigned.[2]

---

[1]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 117,903 vice Justice Wall under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** Retired District Judge Malone was appointed to hear case No. 117,903 vice Justice Standridge under the authority vested in the Supreme Court by K.S.A. 20-2616.

21

*  *  *

STEGALL, J., concurring in part and dissenting in part:  The majority has decided to extend the "tortuous path" of this case into even darker and more tangled thickets by remanding it to the Board for fact-finding on whether EagleMed's disputed bill constitutes a "usual and customary charge" for the air ambulance services rendered. *EagleMed, LLC v. Travelers Insurance*, 315 Kan. ___, ___, ___ P.3d ___ (2022), slip op. at 3. But of course, as the majority acknowledges, such fact-finding cannot include a review or adjudication of EagleMed's "rates, routes, or services." Because to do so would trigger federal preemption of the 2012 Fee Schedule. *EagleMed, LLC*, 315 Kan. at ___, slip op. at 18-19.

I certainly wish the Board and its lawyers well in their forthcoming efforts to understand and solve the impossible puzzle the majority has set for them. Perhaps they will succeed where I have failed. The only possible alternative construction of the operative phrase "usual and customary charges" I can imagine is that the Board is to inquire of EagleMed whether this bill is consistent with what EagleMed charges (or would charge) other similarly situated customers for the same service. I suppose this would protect against discriminatory pricing practices by EagleMed, but that has never been an issue in this case and no party has ever accused EagleMed of violating *its own internal pricing schedule*.

Indeed, this interpretation of the phrase "usual and customary charges" would render the 2012 Fee Schedule a nullity. It would not have the effect of "scheduling" "fees" at all. At most, it would have the effect of implicitly requiring every air ambulance service provider to create *its own fee schedule* made up of whatever prices it wants to charge to similarly situated customers, so long as the provider sticks to it in a non-discriminatory fashion.

22

To explain it like this is to demonstrate its absurdity. This is plainly *not* what the phrase "usual and customary charges" means within a "fee schedule" that is designed to facilitate the resolution of "fee disputes." In my view, the Court of Appeals properly analyzed and interpreted the phrase within the fee schedule. "Usual and customary" is a legal term of art and its meaning is widely known and well understood. See Plitt, et al., Couch on Insurance, § 180:10 Regular and customary charges (3d ed. 2021) ("The typical medical policy provides for payment of a service provider's 'regular and customary charges,' or equivalent phrase. . . . Such provisions serve the purpose of controlling costs by limiting reimbursement for medical treatment to what is generally paid for like services in the surrounding community."); Best, Life and Health Insurance Law, § 18.7 Regular and Customary Charges: Meaning (2021) ("The phrase 'usual and customary charges' seems relatively easy to apply to hospital charges, since both the services and the charges tend to be uniform and standardized. The charges should be the same as those charged other persons.").

Such a definition is, in fact, embedded in the Kansas Workers Compensation Act itself, as the Court of Appeals observed. See K.S.A. 2020 Supp. 44-508(s) (defining "usual charge" as "the amount most commonly charged by healthcare providers for the same or similar services"); K.S.A. 2020 Supp. 44-508(t) (defining "customary charge" as the "usual rates or range of fees charged by healthcare providers in a given locale or area").

This meaning—"usual and customary" as a reference to local market pricing practices across the industry—is without a doubt what was intended by the drafters of the 2012 Fee Schedule. But such a definition triggers federal preemption—as everyone including the majority recognizes. And this is the one outcome the majority is determined

to avoid. I would find that the 2012 Fee Schedule means what it says and is therefore preempted.

Of course, this determination alone does not resolve the matter. But until this case returns to us (which it seems destined to do) I will not opine on the legal effect preemption of the 2012 Fee Schedule would have on the rights and obligations of the parties to this case.

I join the portion of the majority's decision rejecting Travelers' argument that federal Medicare reimbursement rates apply to this dispute.

PATRICK D. MCANANY, Senior Judge, joins the foregoing concurring and dissenting opinion.